**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------X
JINO KURIAKOSE, Individually and On    :
Behalf of All Others Similarly Situated,
                                       :
                    Plaintiff,
                                       :
        -against-                            1:08-cv-7281 (JFK)
                                       :
                                             __Opinion & Order__
FEDERAL HOME LOAN MORTGAGE COMPANY,    :
RICHARD SYRON, PATRICIA L. COOK, and
ANTHONY S. PISZEL,                     :

                    Defendants.  :
----------------------------------------X

<u>APPEARANCES:</u>

>       <u>For Movant Richard H. Moore, as Treasurer of the State</u>
> <u>of North Carolina and as the Sole Trustee of the North</u>
> <u>Carolina Retirement Systems:</u>
>            MOTLEY RICE, LLC
>            20 Church Street
>            Hartford, CT 06103
>                 Of Counsel: William H. Narwold, Esq.

>       <u>For Movant Central States, Southeast and Southwest</u>
> <u>Areas Pension Fund:</u>
>            COUGHLIN STOIA GELLER RUDMAN & ROBBINS, LLP
>            58 South Service Road, Suite 200
>            Melville, NY 11747
>                 Of Counsel: Ramzi Abadou, Esq.
>                             Erik Peterson, Esq.

>       <u>For Movant The City of Austin Police Retirement</u>
> <u>System:</u>
>            PASKOWITZ & ASSOCIATES
>            60 East 42nd Street – 46th Floor
>            New York, NY 10165
>                 Of Counsel: Laurence Paskowitz

>            BERMAN DEVALERIO PEASE TABACCO BURT & PUCILLO
>            One Liberty Square
>            Boston, MA 02109
>                 Of Counsel: Jeffrey C. Block, Esq.

JOHN F. KEENAN, United States District Judge:

BACKGROUND

This proposed securities class action is brought on behalf of all persons who purchased the common stock of the Federal Home Loan Mortgage Company ("Freddie Mac") from November 21, 2007 through August 5, 2008 (the "class period"). Freddie Mac is the shareholder-owned corporation chartered by Congress to provide stability in the secondary market for residential mortgages, increase the liquidity of mortgage investments, and improve the distribution of investment capital available for residential mortgage financing. See 12 U.S.C. § 1451 Note. In September 2008, the company was placed into conservatorship by the Federal Housing Finance Agency.

The complaint in this action, filed on August 15, 2008, asserts that Freddie Mac and several of its directors and/or officers violated § 10(b) and § 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder, by allegedly misrepresenting to investors the soundness of the company's mortgage portfolio, its underwriting standards, and the sufficiency of its capital.[1] (Compl. ¶¶ 3-4, 75-85).

---

[1] A separate class action involving purchasers of Freddie Mac preferred stock who allege securities violations against several investment banks has been filed in this Court and assigned to another

On August 18, 2008, notice of this action was published on Globe Newswire informing members of the proposed class of their ability to move within sixty days to serve as lead plaintiff, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA" or "the Act"), 15 U.S.C. § 78u-(4)(a)(3)(A)(i).   The sixty-day period in which class members could move to be appointed as lead plaintiff expired on October 17, 2008.

Presently before the Court are the timely motions of three pension funds that invested in Freddie Mac common stock during the class period: (1) the City of Austin Police Retirement System ("Austin Police"); (2) Central States, Southeast and Southwest Areas Pension Fund ("Central States"); (3) Richard H. Moore ("Treasurer Moore"), as Treasurer of the State of North Carolina and as the "Sole Trustee" of the North Carolina Retirement Systems ("NCRS"). Each also moves to have its attorney designated as lead counsel, pursuant to 15 U.S.C. § 78u-(4)(a)(3)(B)(v).[2]

---

judge. See Mark v. Goldman Sachs & Co., JPMorgan Chase & Co., and Citigroup Global Markets, Inc., No. 1:08-cv-08181-MGC (S.D.N.Y filed Sept. 23, 2008) (the "Preferred Shareholder Action").

    [2] In connection with the motions, each movant has submitted a memorandum of law ("___ Mem."), a memorandum in opposition to the competing motions ("____ Mem in Opp."), and a reply memorandum, ("___ Reply"), plus supporting declarations, exhibits and other submissions. Additionally, the Attorney General of the State of North Carolina has submitted a memorandum opposing Treasurer Moore's motion. ("Attorney General Cooper Mem. in Opp.")

The prospective lead plaintiffs provide the following information about themselves:

Austin Police is a public pension fund that provides pension retirement and disability benefits to active and retired police officers and beneficiaries. (Austin Police Mem. at 2) It currently has approximately 2000 members.  As of December 31, 2007, its total assets were valued at over $515 million. (Id.) During the class period, Austin Police spent $2.11 million to acquire 122,700 shares of Freddie Mac common stock. (Id.)  It claims to have suffered losses of about $1.77 million, based on either a first-in, first-out ("FIFO") analysis or a last-in, first-out ("LIFO") analysis. (Id.)  If appointed as lead plaintiff, Austin Police moves to have the law firm of Berman, Devalerio, Pease, Tabacco, Burt & Pucillo ("Berman DeValerio") appointed as lead counsel and Roy Jacobs & Associates as local counsel. (Id. at 8-10; 1st Block Decl., Exh. D (Profile of Berman DeValerio)).

Central States is one of the nation's largest Taft-Hartley Funds, with approximately 100,000 active participants and more than $26 billion in assets at year-end 2007. (2nd Rosenfeld Decl., Exh. E (Decl. of James P. Condon) ¶ 2.)  During the class period, it purchased 932,709 total shares and 581,593

- 4 -

net shares[3] of Freddie Mac stock, expending net funds of $17.17 million. (Id., Exh. D.)  Central States sustained FIFO losses of $25.2 million, and LIFO losses of $15.601 million. (Central States Mem. in Opp. at 5-6 & n.3.)   If appointed lead counsel, Central States moves to have the law firm of Coughlin, Stoia, Geller, Rudman & Robins, LLP ("Coughlin Stoia") appointed as lead counsel. (See Central States Mem. at 10-11; 1st Rosenfeld Decl., Exh. D (Profile of Coughlin Stoia)).

        Treasurer Moore claims to be the "sole trustee" of NCRS and duly authorized to institute legal action on its behalf. (Treasurer Moore Mem.; 1st Narwold Decl., Exh. A (Certification of Treasurer Moore) ¶ 2.)  He moves for an order appointing NCRS as lead plaintiff.  NCRS is the tenth-largest public pension fund in the United States. (Treasurer Moore Mem. at 5.)  During the class period, it purchased 1,281,186 total and 1,156,345 net shares of Freddie Mac common stock, expending net funds of $20.12 million to acquire the shares. (Treasurer Moore Mem. in Opp. at 6.)   NCRS's FIFO losses were $18.15 million, and its LIFO losses were $15.624 million. (Id.) Treasurer Moore moves to have the law firm of Motley Rice LLC ("Motley Rice") appointed as lead counsel. (See Treasurer Moore

---

        [3] "Net shares" is the total number of shares purchased during the class period minus the number of shares sold during the class period.

Mem. at 10-11; 1st Narwold Decl., Exh. D (Profile of Motley Rice)).

The motions became fully briefed on November 13, 2008, and oral argument was heard on the following day.  Upon due consideration, and for the reasons set forth below, the Court appoints Central States as lead plaintiff and approves of its selection of Coughlin Stoia as lead counsel.

## DISCUSSION

### I.  Statutory Overview

The PSLRA requires the Court to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be the most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i).  The Act creates a rebuttable presumption that the most adequate plaintiff is that "person or group of persons" who (1) "has either filed the complaint or made a motion in response to a notice [published pursuant to 15 U.S.C.A. § 78u-4(a)(3)(A)(i)];" (2) "in the determination of the court, has the largest financial interest in the relief sought by the class;" and (3) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C.A. § 78u-4(a)(3)(B)(iii)(I)(aa)-(cc).

In order to identify the presumptively most adequate

- 6 -

plaintiff,

> the district court must compare the financial stakes
> of the various plaintiffs and determine which one has
> the most to gain from the lawsuit. It must then focus
> its attention on _that_ plaintiff and determine, based
> on the information he has provided in his pleadings
> and declarations, whether he satisfies the
> requirements of Rule 23(a), in particular those of
> 'typicality' and 'adequacy.' If the plaintiff with the
> largest financial stake in the controversy provides
> information that satisfies these requirements, he
> becomes the presumptively most adequate plaintiff. If
> the plaintiff with the greatest financial stake does
> not satisfy the Rule 23(a) criteria, the court must
> repeat the inquiry, this time considering the
> plaintiff with the next-largest financial stake, until
> it finds a plaintiff who is both willing to serve and
> satisfies the requirements of Rule 23.

In re Host America Corp. Sec. Litig., 236 F.R.D. 102, 105 (D. Conn. 2006) (quoting In re Cavanaugh, 306 F.3d 726, 730 (9th Cir. 2002).

Once established, the presumption may be rebutted "only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff-(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-1(a)(3)(B)(iii)(II).   At this step, "the process turns adversarial and other plaintiffs may present evidence that disputes the lead plaintiff's prima facie showing of typicality and adequacy." In re Cavanaugh, 306 F.3d at 731.

After the lead plaintiff is chosen, the PSLRA provides that the lead plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v).

## II. Presumptive Most Adequate Plaintiff

### A.   Financial Interest

The PLSRA does not specify how courts should determine which class member has the "largest financial interest."  Courts in this circuit have looked to the following four factors (the "Lax test"): "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered during the class period." In re Olsten Corp. Sec. Litig., 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1996) (citing Lax v. First Merchants Acceptance Corp., 1997 WL 461036 (N.D. Ill. Aug. 11, 1997)); Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. LaBranche & Co., Inc., 229 F.R.D. 395, 404 (S.D.N.Y. 2004); In re Initial Pub. Offering Sec. Litig., 214 F.R.D. 117, 121 (S.D.N.Y. 2002).  The fourth factor——amount of losses suffered——is by far the most significant. Vladimir v. Bioenvision, Inc., No. 07-cv-6416 (SHS) (AJP), 2007 WL 4526532, at *5 (S.D.N.Y. Dec. 21, 2007).

To calculate losses, courts favor the LIFO accounting method over FIFO. Id. (citing cases). Under LIFO, the most recently-acquired shares are assumed to be sold first for loss calculation purposes. Under FIFO, shares that were acquired first are assumed to be sold first. "The main advantage of LIFO is that, unlike FIFO, it takes into account gains that might have accrued to plaintiffs during the class period due to the inflation of the stock price. FIFO . . . ignores sales occurring during the class period and hence may exaggerate losses." In re eSpeed, Inc. Sec. Litig., 232 F.R.D. 95, 101 (S.D.N.Y. 2005).

Applying these measures, NCRS has the largest financial stake in the litigation. The first three Lax factors all clearly weigh in its favor, as it purchased the most total shares (1,281,186) and the most net shares (1,156,345), and had the highest net expenditures (about $20.12 million). The fourth and most important factor, amount of loss suffered, also favors NRCS when loss is calculated using the preferred LIFO method. (Id.) NCRS suffered slightly higher LIFO losses than Central States, $15.624 million compared to $15.601 million, a difference of less than one half of a percent. Cf. In re Pfizer Inc. Sec. Litig., 233 F.R.D. 334, 338 (S.D.N.Y.) (deeming losses differing by less than two percent to be "roughly equal" given

the probable margin of error in damage calculations).  These losses far exceed the approximately $1.77 million in damages suffered by Austin Police.

Central States cites a few cases stating that the first three Lax factors are relatively unimportant compared to the amount of loss suffered.  See, e.g., In re Bally Total Fitness Sec. Litig., 2005 WL 627960, at *4 (N.D. Ill. Mar. 15, 2005); Weiss v. Friedman, Billings, Ramsey Group, Inc., 2006 WL 197036, at * 3 (S.D.N.Y. Jan. 25, 2006).  It then points to its higher FIFO losses—$25.2 million compared to NCRS's $18.2 million.  However, the FIFO analysis does not take into account the amount Central States recouped by selling Freddie Mac shares during the class period at allegedly inflated prices.  See In re eSpeed, 232 F.R.D. at 101.  For this reason, district courts in New York "have generally rejected FIFO as an appropriate means of calculating losses in securities fraud cases." Hunt v. Enzo Biochem, Inc., 530 F. Supp. 2d 580, 590 n.70 (S.D.N.Y 2008) (quoting In re eSpeed, 232 F.R.D. at 101).  Calculated on a LIFO basis, Central States' damages are lower than NCRS's.

Thus, all four Lax factors indicate that NRCS has the largest financial interest in the action, although its interest is only slightly larger than that of Central States.  Austin Police is a distant third.

- 10 -

B. <u>Rule 23 Requirements</u>

Typicality and adequacy are the only Rule 23 criteria that are relevant in determining the lead plaintiff under the PSLRA. <u>See</u> <u>Pirelli</u>, 229 F.R.D. at 412. In a motion to be appointed as lead plaintiff, a class member need only make a 'preliminary showing' that the Rule's typicality and adequacy requirements have been satisfied." <u>Kemp v. Universal American Financial Corp.</u>, No. 05 Civ. 9882 (JFK), 2006 WL 1190691, at *2 (S.D.N.Y. May 1, 2006).

1. *Typicality*

The requirement of typicality is met if "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." <u>In re Drexel Burnham Lambert Group, Inc.</u>, 960 F.2d 285, 291 (2d Cir. 1992) (citations omitted). A lead plaintiff's claims "need not be identical to the claims of the class to satisfy the typicality requirement." <u>Pirelli</u>, 229 F.R.D. at 412.

Here, all movants satisfy the typicality requirement. Each claims to have purchased Freddie Mac common stock during the class period at prices inflated by the company's alleged misrepresentations regarding the soundness of its mortgage portfolio, its underwriting standards, and the sufficiency of

its capital.   These claims are typical of the class claims because they arise from the same events and are based on the same legal theories.

    2.  *Adequacy*

    Rule 23's adequacy requirement is satisfied where the lead plaintiff can "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).  "In this examination, the Court scrutinizes (1) whether the proposed class counsel is qualified, experienced, and generally able to conduct the litigation; (2) whether the proposed lead plaintiff has interests that are antagonistic to other class members; and (3) whether the proposed lead plaintiff and the class possess sufficient interest to pursue vigorous prosecution of their claims." <u>Constance Sczesny Trust v. KPMG LLP</u>, 223 F.R.D. 319, 324 (S.D.N.Y. 2004) (internal citations and quotation marks omitted).

    Based on their memoranda and declarations, each prospective lead plaintiff has made a "preliminary showing" that it satisfies the adequacy requirement.  All have selected counsel whose résumés reflect substantial experience and competence in handling complex securities litigations.  None appear to have any interests antagonistic to the class's interests.  Finally, each is a sophisticated institutional

investor claiming substantial losses from the alleged securities fraud, indicating that it has sufficient interest and ability to prosecute the class claims vigorously.

Because NCRS has the largest financial interest and has made a prima facie showing that it meets Rule 23's requirements, it is the presumptively most adequate plaintiff under the PSLRA.  The inquiry turns to whether this presumption has been rebutted.

**III. Rebuttal of the Most Adequate Plaintiff Presumption**

### A. The Presumption in Favor of NCRS Is Rebuted

The evidence presented in opposition to Treasurer Moore's motion strongly refutes the presumption that NCRS is the most adequate lead plaintiff.  The North Carolina State Attorney General, Roy Cooper, has filed an opposition to the motion on the ground that the Treasurer lacks authority under North Carolina law either to seek NCRS's appointment as lead plaintiff or to retain counsel to represent NCRS in this litigation. (Attorney General Cooper Mem. in Opp. at 2-5.)  Indeed, the Attorney General's chief deputy sent a letter to the Treasurer asserting that he lacked authority to bring the motion just four days after he filed it. (See 2nd Rosenfeld Decl., Exh. A. (Oct. 21, 2008 Letter from Grayson G. Kelley, Chief Dep. Att'y Gen., to William H. Narwold, Counsel to Treasurer Moore.)  The letter

demanded that the motion be withdrawn and threatened to take actions necessary to enforce North Carolina State law.  It reads in part:

> [T]he Treasurer has acted without the approval of the Governor of the State of North Carolina, the Attorney General of the State of North Carolina [and] . . . the Retirement Systems.  Without approvals required by law, the Treasurer has no legal authority to engage private legal counsel to represent the State of North Carolina or to participate in this litigation.
>
> . . . Contrary to the assertions in your [lead plaintiff] motion, there is no authority under North Carolina law for the Treasurer to serve as "sole trustee" for these Retirement Systems and such an assertion is unsupportable as a matter of law.  Furthermore, it is our belief that the Treasurer neither advised nor received the approval of these boards of trustees to participate in this litigation.

(Id.)  Counsel for the Treasurer disputes the Attorney General's interpretation of North Carolina law and explains that the two elected officials are embroiled in a political "shoving match." (Treasurer Moore Reply; Oral Arg. Tr. at 12.)

Given the uncertainty surrounding the Treasurer's legal authority to act on NCRS's behalf, the Court cannot accept his certification that NCRS is willing and able to serve as lead plaintiff.  Nor would it be in the class's interest to have a lead plaintiff likely to become bogged down in state court litigation concerning its participation in this federal securities class action.  Therefore, Treasurer Moore's motion to have NCRS appointed as lead plaintiff is denied.

The lead plaintiff presumption thus passes to Central States, which has the next largest financial stake in the action and has shown, at least as a preliminary matter, that it satisfies Rule 23's requirements.

B. <u>The Presumption in Favor of Central States Is Not Rebutted</u>

Both Treasurer Moore and Austin Police raise several arguments in their unsuccessful attempt to rebut the presumption that Central States is the most adequate plaintiff.

First, Treasurer Moore points out that Central States has been operating since 1982 under a consent decree with the Department of Labor arising from allegations of corruption and mismanagement in the 1960s and 1970s. (Treasurer Moore Mem. in Opp. at 8; 2nd Narwold Decl., Exh. C (<u>Donovan v. Fitzsimmons et al.</u>, No. 78 Civ. 342 (N.D. Ill Sept. 22, 1982) (the "consent decree")). The consent decree requires that a court-approved named fiduciary exercise exclusive control over the fund's assets and make its investment decisions. (<u>Id.</u> at 5-8.) It also calls for a court-appointed independent special counsel to monitor and report upon the fund's compliance with the decree. (<u>Id.</u> at 16-23.)

Notably, the consent decree does not place any restrictions whatsoever on Central States' conduct of litigation or ability to serve as lead plaintiff. Treasurer Moore's

- 15 -

counsel admitted during oral argument, with commendable candor, that he could not think of any way that the consent decree realistically might affect Central States' ability to represent the class. (Oral Arg. Tr. at 12.)

The Treasurer cites two unpublished decisions that relied on the consent decree as a basis for finding Central States inadequate. In Police & Fire Ret. Sys. Of Detroit v. SafeNet, Inc., 06 Civ. 5797 (PAC), at 6-7 (S.D.N.Y. Feb. 21, 2007), Central States was not the presumptively most adequate plaintiff. Accordingly, the court gave a very brief discussion of the fund's adequacy, without specifying how the consent decree might impact the fund's performance as lead plaintiff. See id. (stating only that "given the checkered past of the Central State's [sic] behavior; and the fact that at least some portion of Central States is subject to a court appointed monitor's oversight, there are reasonable doubts as to whether Central States can be an adequate representative"). In Baker v. Arnold, No. C 03-05642, at 7 (N.D. Cal. May 17, 2004), Central States was facing an imminent funding deficiency that threatened to place it in violation of the consent decree. Id. at 5-6. The court in Baker found that these circumstances might weaken the fund's ability to represent the class adequately during settlement negotiations. Id. at 6. Central States' financial

- 16 -

circumstances now appear to be different. Treasurer Moore acknowledges that the then-imminent funding deficiency was averted in July 2005 when the Internal Revenue Service granted Central States a ten-year extension for amortizing its unfunded liabilities. (Treasurer Moore Mem. in Opp. at 9; 2nd Narwold Decl., Exh. E (Quarterly Report of Indep. Spec. Counsel dated Aug. 1, 2008) at 1.) According to the declaration of Central States' deputy general counsel, the amortization extension "remains in effect and prevents Central States from incurring a statutory funding deficiency." (2nd Rosenfeld Decl., Exh. E. (Decl. of James P. Condon, Dep. Gen. Counsel for Central States) ¶ 10.) No one has disputed this representation.[4]

Furthermore, Central States has served recently as a lead plaintiff in numerous securities class actions with the consent decree in force. In re Cisco Sys., Inc. Sec. Litig., No

---

[4] Treasurer Moore and Austin Police do provide a recent article reporting that Central States, like other pension funds, currently faces some financial difficulty and has been certified as being in "critical status" within the meaning of the Pension Protection Act of 2006 ("PPA"). (Treasurer Moore Mem. in Opp. at 9; 2nd Narwold Decl., Exh. D (Diana Furchgott-Roth, Unions v. Private Pension Plans:  How Secure Are Union Members' Retirements, Hudson Inst., July 2008) at 27). However, the Court has reviewed the most recent quarterly report prepared by Central States' independent special counsel.  The report states that the fund's financial situation has improved in recent years, that the amortization extension continues to prevent a statutory funding deficiency, and that the fund has adopted a rehabilitation plan to address the requirements of the PPA. (See 2nd Narwold Decl., Exh. E (Quarterly Report of Indep. Spec. Counsel dated Aug. 1, 2008) at 2-5.)  Central States is one of the nation's largest Taft-Hartley funds, and its counsel represents that it has the resources to prosecute this lawsuit on behalf of the class. (Oral Arg. Tr. at 19).

- 17 -

C-01 20418 (JW)(PVT), 2004 WL 5326262 (N.D. Cal. 2004); <u>Rubin v. MF Global Ltd.</u>, No. 08-cv-2233 (S.D.N.Y June 23, 2008); <u>In re HealthSouth Corp. Sec. Litig.</u>, No. CV-03-BE-1500-S (N.D. Ala. 2005); <u>Selbst v. McDonalds Corp. Corp.</u>, No. 04-CV-2422 (N.D. Ill. 2004).

Austin Police argues that Central States' choice for lead counsel, Coughlin Stoia, suffers from a potential conflict of interest. The law firm has been proposed as lead counsel in the Preferred Shareholder Action, <u>see</u> <u>supra</u> note 1, by the prospective lead plaintiff in that case who appears to have suffered the greatest financial loss. Thus, Coughlin Stoia is seeking to serve as lead counsel for a class of Freddie Mac preferred shareholders in the Preferred Shareholder Action and for the class of common shareholders in this action.

At this time, the two classes assert different causes of action against different groups of defendants. The complaint in this action alleges that Freddie Mac and several of its officers and directors violated § 10(b) and § 20(a) of the Exchange Act and Rule 10b-5 with misrepresentations that inflated the price of the common stock during the class period, November 21, 2007 through August 5, 2008. In the Preferred Shareholder Action, the complaint alleges that several investment banks which underwrote the offering of certain

- 18 -

preferred stock violated § 12(a)(2) of the Securities Act of 1933 by including misrepresentations in the preferred offering materials, which were dated November 29, 2007.  In both suits, the investors claim to have been misled about the soundness of Freddie Mac's mortgage portfolio, its underwriting standards, and the sufficiency of its capital.  No motions to consolidate the two actions have been filed as of yet.  See 15 U.S.C. § 78u-4(a)(3)(B)(ii).

    Austin Police predicts that, if Coughlin Stoia were appointed lead counsel in the Preferred Shareholder Action, the firm would add Freddie Mac and its officers and directors as defendants in that case.  The firm then would be seeking recovery for two classes from a common pool of assets.  See, e.g., Kuper v. Quantum Chemical Corp., 145 F.R.D. 80, 83 (S.D. Ohio 1992) (holding that this presents a conflict of interest); Krim v. pcOrder.com, Inc., 210 F.R.D. 581, 590 (W.D. Tex. 2002) (same); Sullivan v. Chase Inv. Services of Boston, Inc., 79 F.R.D. 246, 258 (N.D. Cal. 1978) (same).  At oral argument, however, counsel from Coughlin Stoia stated unequivocally that the firm would not join the Freddie Mac defendants in the Preferred Shareholder Action. (Oral Arg. Tr. at 14-15) Therefore, the potential conflict identified by Austin Police will not materialize.  See Dietrich v. Bauer, 192 F.R.D. 119, 126

- 19 -

(S.D.N.Y. 2000) (finding that counsel could represent two overlapping classes of plaintiffs as long as the class actions are waged against different defendants).

Additionally, Austin Police claims that Coughlin Stoia would make inconsistent arguments while representing the preferred and common shareholders in these actions. In the Preferred Shareholder Action, plaintiffs presumably will argue that the decline in the price of the preferred stock was caused by misrepresentations in the preferred offering materials pertaining to the soundness of Freddie Mac's mortgage portfolio, its underwriting standards, and the sufficiency of its capital. The Court does not see how this argument would conflict with the common shareholders' claims that misrepresentations of the same nature made by the company throughout the class period caused the decline in the price of the common stock. See Dietrich, 192 F.R.D. at 126-127 (rejecting the argument that a law firm's prosecution of a parallel class action against different defendants barred its appointment as lead counsel, where alleged conflict was limited to loss calculation and damages).[5]

---

[5]   Austin Police's reliance at oral argument on the Second Circuit's decision in Central States Southeast and Southwest Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C., 504 F.3d 229 (2d Cir. 2007), is misplaced. That decision held that it was improper to certify one class to represent several employee welfare benefits plans, where one of the plans had particular interests antagonistic to the interests of the other plans. Id. at 246. The Court of Appeals held that the district court should have certified

At oral argument, the Court noted that the two court-approved named fiduciaries of Central States are joined as defendants in the Preferred Shareholder Action because they underwrote Freddie Mac's preferred offering. (Oral Arg. Tr. at 16.)  According to Coughlin Stoia, Central States knows that its counsel is seeking appointment as lead counsel in a parallel class action against its named fiduciaries. (Id. at 18-19.)  The Court is satisfied that this will not affect Central States' representation of the interests of the common shareholders, because the fund's named fiduciaries are not defendants in this action.[6]

Next, Austin Police asserts that Central States failed to list on its certification four securities class actions in which it previously had sought to serve as lead plaintiff.  The PSLRA requires each party seeking to represent a class to submit

---

subclasses. Id.  Here, it is not certain that the claims of the common and preferred shareholders will be consolidated in one action, much less certified as one class, or that the interests of the two investor groups are even antagonistic.  Therefore, the conflict that Austin Police identifies is too speculative to cast doubt on the ability of Central States' selected counsel to represent the common shareholders in this action.

[6] Counsel for Central States argues that no conflict arises given the PSLRA's strong preference for institutional investors as lead plaintiffs, and the fact that such investors typically have ties to large financial institutions frequently named as defendants in securities class actions. (Oral Arg. Tr. at 17-18.)  The Court does not need to address this argument because none of Central States' named fiduciaries or investment advisors presently is a defendant in this case.

a sworn certification that, _inter alia_, "identifies any other action under this chapter, filed during the [previous] 3-year period . . ., in which the plaintiff has sought to serve as a representative party on behalf of a class." 15 U.S.C.A. § 78u-4 (a)(2)(A). Only one of the four cases identified by Austin Police was filed within the last three years and, therefore, should have appeared on Central States' certificate. The omission of the one case was not very significant because, as an institutional investor, Central States is not subject to the PLSRA's strict ban on "professional plaintiffs" who have served as lead plaintiff in more than five class actions in the previous three-year period. 15 U.S.C. § 78u-4(a)(3)(b)(vi); H.R. Conf. Rep. No. 104-369, at 34 (1995), _reprinted in_ U.S.C.C.A.N. at 734 (stating that institutional investors "do not represent the type of professional plaintiff that this legislation seeks to restrict"). Nor has Central States been appointed as lead plaintiff in more than five class actions within the previous three-year period. Some courts have even questioned whether movants for lead plaintiff who have not filed a complaint, such as Central States, are subject to the certification requirement at all, given the provision's heading "Certification filed with complaint." _See_ _Bioenvision, Inc._, 2007 WL 4526532, at *5 & n.20; _Pirelli_, 229 F.R.D. at 407. Others have been willing to

- 22 -

excuse minor defects in the certificate such as the one at issue here. See, e.g., Bhojwani v. Pistiolis, No. 06 Civ. 1361, 2007 WL 2197836, at *8 (S.D.N.Y. July 31, 2007) (stating that "the adequacy of the certificate should not be the determinative factor in selecting the lead plaintiff"); Chill v. Green Tree Financial Corp., 181 F.R.D. 398, 411 (D. Minn. 1998). Moreover, Central States submitted an amended certificate correcting the defect promptly after it was discovered.

Finally, and as a fallback, Austin Police requests that the Court appoint it as co-lead plaintiff with Central States, and also designate its counsel as co-lead counsel with Coughlin Stoia. The Court sees no need for two lead plaintiffs and two lead law firms to represent the common shareholders, as this would result in unnecessary disagreement, motion practice, delay, and increased attorney's fees.

In sum, the objections raised are insufficient to rebut the PSLRA's presumption that Central States is the most adequate plaintiff. Accordingly, Central States is appointed as lead plaintiff.

## IV. Approval of Lead Counsel

The PSLRA provides that the lead plaintiff shall select and retain counsel to represent the class, subject to the approval of the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v). The

statute "'evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.'" In re Adelphia Communications Corp. Sec. and Derivative Litig., No. 03 MDL 1529 (LMM), 2008 WL 4128702, at *2 (S.D.N.Y. Sept. 3, 2008) (quoting In re Cendant Corp. Litig., 264 F.3d 201, 276 (3d Cir. 2001). The Court should disrupt the lead plaintiff's choice only when "necessary to protect the interests of the class." In re Cendant, 264 F.3d at 274 (quoting H.R. Conf. Rep. No. 104-369, at 35 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 734; S. Rep. No. 104-98, at 11-12 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 690).

Here, Central States has selected and retained counsel with substantial experience in litigating securities fraud class actions. Coughlin Stoia recently was praised for its representation of shareholders in the Enron litigation, which resulted in a $7.2 billion recovery. In re Enron Corp. Sec., Derivative & "ERISA" Litig., No. MDL 1446, 2008 WL 4178130, at *40 (S.D. Tex. Sept. 8, 2008) ("The Court finds that in the face of extraordinary obstacles, the skills, expertise, commitment and tenacity of [Coughlin Stoia] in this litigation cannot be overstated."). The Court approves of Coughlin Stoia as lead counsel.

- 24 -

CONCLUSION

For the reasons stated above, Central States' motion for appointment as lead plaintiff and for approval of Coughlin Stoia as lead counsel is GRANTED. The competing motions of Treasurer Moore and Austin Police are DENIED. The Clerk of the Court is respectfully directed to close the motions. (Doc. #'s 10, 16, 19.)

As discussed at the November 14, 2008 conference, the parties are directed to attempt to reach stipulations regarding the proposed intervention of the Federal Housing Finance Agency and its anticipated motion to seek a 90-day stay of the proceedings.

SO ORDERED.

Dated:        New York, New York
              November 24, 2008


_____
        JOHN F. KEENAN
   United States District Judge

- 25 -