UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x
JINO KURIAKOSE, Individually and On          :   Civil Action No. 1:08-cv-7281 (JFK)
Behalf of All Others Similarly Situated,     :
                                             :
                    Plaintiff,               :   PLAINTIFFS' MOTION TO DECLARE
                                             :   UNENFORCEABLE THE "NON
          vs.                                :   PARTICIPATION" CLAUSE IN FREDDIE
                                             :   MAC'S EMPLOYEE SEVERANCE
FEDERAL HOME LOAN MORTGAGE                    :   AGREEMENTS AND INCORPORATED
COMPANY, RICHARD SYRON, PATRICIA             :   MEMORANDUM OF LAW IN SUPPORT
L. COOK, and ANTHONY S. PISZEL,              :   THEREOF
                                             :
                    Defendants.              :
                                             :
———————————————————— x

## TABLE OF CONTENTS

TABLE OF CONTENTS ..............................................................................................................i

I.     INTRODUCTION ......................................................................................................1

II.    BACKGROUND .......................................................................................................4

    A.    The "Non Participation" Clause...................................................................5

    B.    The "Non Participation" Clause Has Thwarted Plaintiffs' Investigators ...............6

        1.    Seven Former Employees Declined Interviews with Hirsch ......................6

        2.    Two Former Employees Declined Interviews with Hoffman......................7

        3.    Eight Former Employees Declined Interviews with Monty .......................8

        4.    Five Former Employees Declined Interviews with Neely...........................9

        5.    Freddie Mac's "Non Participation" Clause Has Been Effective In
            Hiding the Truth.....................................................................................10

III.    ARGUMENT ..........................................................................................................10

    A.    Companies Accused of Committing Securities Fraud Cannot Prevent
        PSLRA Plaintiffs from Communicating with Former Company Employees
        about Non Privileged and Non Confidential Information Relating to that
        Misconduct.............................................................................................10

    B.    Information From Confidential Witnesses Can Be An Important Part of
        Satisfying the PSLRA's Heightened Pleading Requirements ...............................13

    C.    Communication with Former Company Employees About Securities
        Fraud Is Not "Discovery" For the Purposes of the PSLRA...................................14

    D.    This Court Should Enter an Order Declaring the "Non Participation"
        Clause Unenforceable And Requiring Freddie Mac to Inform Former
        Employees That They Are Not Bound By the "Non Participation" Clause ..........16

IV.    CONCLUSION.......................................................................................................17

# TABLE OF AUTHORITIES

## CASES

*Branzburg v. Hayes*,
    408 U.S. 665 (1972)................................................................................................13

*Chambers v. Capital Cities/ABC*,
    159 F.R.D. 441 (S.D.N.Y. 1995) ............................................................................11, 16

*Hoffman v. Sbarro, Inc.*,
    No. 97 CIV. 4484(SS), 1997 WL 736703 (S.D.N.Y. Nov. 26, 1997) ..............................13

*IBM v. Edelstein*,
    526 F.2d 37 (2d Cir. 1975)...............................................................10, 11, 12, 15

*In re Flir Sys., Inc. Sec. Litig.*,
    No. Civ. 00-360-HA, 2000 WL 33201904 (D. Or. Dec. 13, 2000) ..................................11

*In re JDS Uniphase Corp. Sec. Litig.*,
    238 F. Supp. 2d 1127 (N.D. Cal. 2002) ....................................................................11, 15

*In re PXRE Group, Ltd., Sec. Litig.*,
    600 F. Supp. 2d 510 (S.D.N.Y. 2009)...................................................................14

*In re Scottish Re Group Sec. Litig.*,
    524 F. Supp. 2d 370 (S.D.N.Y. 2007)...................................................................14

*In re Tyco Int'l. Ltd. Sec. Litig.*,
    No. 00-MD-1335-B, 2001 WL 34075721 (D.N.H. Jan. 30, 2001).............................12, 15

*In re Xethanol Corp. Sec. Litig.*,
    No. 06 Civ. 10234(HB), 2007 WL 2572088 (S.D.N.Y. Sept. 7, 2007)............................14

*McGrane v. Reader's Digest Ass'n, Inc.*,
    822 F. Supp. 1044 (S.D.N.Y. 1993)......................................................................12

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000).................................................................................13

*Roberts v. United States*,
    445 U.S. 552 (1980)..............................................................................................13

*Ross v. Bolton*,
    904 F.2d 819 (2d Cir. 1990).................................................................................14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)................................................................................................3

*Town of Newton v. Rumery*,
   480 U.S. 386 (1987)......................................................................................13

*United States v. Hasson*,
   333 F.3d 1264 (11th Cir. 2003) ...................................................................12

## STATUTES, RULES AND REGULATIONS

15 U.S.C. §78u-4(b)(3)(B)..................................................................................3

18 U.S.C. §3.......................................................................................................12

18 U.S.C. §4.......................................................................................................12

18 U.S.C. §371...................................................................................................12

18 U.S.C. §§1341-1346 .....................................................................................12

18 U.S.C. §§1501-1517 .....................................................................................12

18 U.S.C. §1512.................................................................................................12

Lead Plaintiff, Central States, Southeast and Southwest Areas Pension Fund and plaintiff National Elevator Industry Pension Plan (collectively, "Plaintiffs"), respectfully move this Court to enter an Order declaring unenforceable the herein-described "Non Participation" clause contained within the severance agreements between defendant Federal Home Loan Mortgage Corporation (hereinafter "Freddie Mac" or the "Company") and many of its former employees. In support thereof, Plaintiffs state:

## I.    INTRODUCTION

Freddie Mac was a substantial cause of the global credit crisis and the collapse of the subprime and non-traditional mortgage markets. Plaintiffs allege Defendants Freddie Mac, Richard Syron ("Syron"), Patricia L. Cook ("Cook"), and Anthony S. Piszel ("Piszel") (collectively, "Defendants") (Syron, Cook, and Piszel are sometimes hereinafter collectively referred to as the "Individual Defendants") defrauded Freddie Mac's shareholders out of billions of dollars by making false and misleading statements regarding Freddie Mac's risk and credit exposure to the subprime and non-traditional mortgage markets as well as its capital sufficiency, thereby artificially inflating the price of its equity securities.

Fearing exposure, Freddie Mac required employees who were terminated or resigned and were given a severance package to sign a "Non Participation" clause—tantamount to a unilaterally-imposed gag order—with dire economic consequences for those who would dare to tell the truth and expose Defendants' fraudulent acts. These draconian measures, designed to punish those who wish to tell the truth, have worked, creating substantial obstacles that have and continue to inhibit Plaintiffs from further gathering critical information that would corroborate Plaintiffs' claims in this case, despite the fact that the former employees Freddie Mac seeks to constrain have said that they are ready, willing, and able to provide information that would expose Defendants' fraud.

As demonstrated below, former Freddie Mac employees contacted in the course of Plaintiffs' investigation *want* to talk and tell their stories exposing Defendants' fraud. However, as a result of their fear of the "Non Participation" clauses, at least twenty-two former employees will not talk. Unless this Court determines that the "Non Participation" clause is void and unenforceable, Freddie Mac's campaign to hide the truth will work.

Accordingly, Plaintiffs ask this Court to enforce a principle of public policy that is especially salient and necessary given Freddie Mac's brazen attempt to silence former employees who desire to expose Defendants' fraud and tell the truth, but fear Defendants' wrath. Put simply, public policy mandates that companies accused of committing securities fraud are not allowed to prohibit former company employees from discussing that fraud with plaintiffs who have filed suit under the Private Securities Litigation Reform Act ("PSLRA"). Nevertheless, that is precisely what Freddie Mac is doing here, and it should be stopped.

To be sure, Plaintiffs previously set forth the basic factual predicate underlying this case in *Lead Plaintiff's Motion to Partially Lift the PSLRA Discovery Stay* and concomitant letter to this Court. [Dkt. Nos. 97, 107-108]. This case is about Defendants' false and misleading statements to investors concerning the Company's financial performance and future business prospects, including its exposure to the subprime and non-traditional mortgage markets as well as its risk management and sufficiency of its capital resources.

Defendants' fraud has snowballed into investigations by the U.S. House of Representatives Committee on Oversight and Government Reform, the U.S. Attorney's Offices for the Southern District of New York and the Eastern District of Virginia, the Securities and Exchange Commission ("SEC") and the FBI, and more importantly, into devastating financial losses to Freddie Mac's shareholders.

- 2 -

The impact of the constraints imposed by the "Non Participation" clause is magnified by the fact that the PSLRA imposes a heightened pleading standard in securities fraud cases and provides for a stay of discovery. *See* 15 U.S.C. §78u-4(b)(3)(B).[1] Freddie Mac, undoubtedly cognizant of the hurdles imposed by the PSLRA, crafted the "Non Participation" clause for the obvious purpose of thwarting any efforts by Defendants' victims to investigate and obtain information concerning Defendants' fraud until ***after*** satisfaction of the PSLRA's pleading requirements are (without the benefit of discovery, which is stayed until after the heightened pleading standards are met).

Thus, Freddie Mac has intentionally and knowingly attempted to prevent Plaintiffs from conducting the very investigation required to satisfy the PSLRA.  This Court should not condone, and in fact should reject, Defendants' efforts.  If the Court fails to do so, it is easy to imagine how quickly every public company in the United States will follow suit, contractually prohibiting their employees from ever exposing corporate fraud.  This would have a severe chilling effect, and would position corporate America to completely insulate itself from being held responsible for fraudulent acts, no matter how dire the consequences are for defrauded investors.

To be clear, Plaintiffs' investigators have attempted to communicate with twenty-two ***former*** Freddie Mac employees gagged by the "Non Participation" clause.  Plaintiffs' investigators sought only ***non-privileged, non-confidential*** information ***relating directly to the fraud*** alleged in this case.

---

[1]     The Supreme Court set forth the governing rule for pleading fraud in PSRLA cases in *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007). The PSLRA's discovery limitation provides, in pertinent part:

> In any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party.

Those twenty-two former employees declined to talk because of fears of violating the "Non Participation" clause in their severance agreements with Freddie Mac.

Freddie Mac should not be permitted to use the "Non Participation" clause as a weapon to prevent Plaintiffs' investigators from communicating with former employees about the fraudulent conduct underlying the allegations in this case. Plaintiffs' investigation is not "discovery" under the PSLRA and is not subject to the PSLRA's discovery stay. Accordingly, and for the reasons more fully stated herein, Plaintiffs respectfully ask this Court to issue an order declaring the "Non Participation" clause null, void, and unenforceable, and requiring Freddie Mac to instruct the former employees of the Court's Order in writing.[2]

## II.    BACKGROUND

Plaintiffs attach hereto and incorporate by reference herein the sworn declarations of four investigators:   David Hirsch ("Hirsch"); Ronald F. Hoffman ("Hoffman"); Desiree Monty ("Monty"); and Gillian Neely ("Neely").[3]

Each of these investigators, who were employed by Coughlin Stoia Geller Rudman & Robbins, LLP ("CSGRR"), Lead Counsel for Plaintiffs, has contacted and attempted to interview a total of twenty-two different former Freddie Mac employees subject to the "Non Participation" clause. Those former employees refused interviews with the investigators as a result of the "Non Participation" clause.

---

[2]     A draft of the correspondence Plaintiffs request the Court require Freddie Mac to send to employees subject to the "Non Participation" clause is attached as **Exhibit** "**A.**"

[3]     *See* Hirsch Declaration ("Hirsch Decl."), attached to the Declaration of David J. George (the "George Decl.") as **Exhibit 1**; Hoffman Declaration ("Hoffman Decl."), attached to the George Decl. as **Exhibit 2**; Monty Declaration ("Monty Decl."), attached to the George Decl. as **Exhibit 3**; and Neely Declaration ("Neely Decl."), attached to the George Decl. as **Exhibit 4**. The George Decl. is attached hereto as **Exhibit** "**B**."

- 4 -

### A.        The "Non Participation" Clause

Freddie Mac's unilaterally-imposed muzzle—the "Non Participation" clause in Freddie

Mac's severance agreements—states:

> You acknowledge that in the absence of this agreement you have the right voluntarily **to assist others in bringing claims against the released parties.**  By signing below, you agree to waive this right.   Therefore, except as otherwise provided in the agreement, **you agree that you will not encourage, counsel or assist any attorney, their clients, or any other person (including current or former Freddie Mac employees) in bringing or prosecuting any claim, charges, or complaints against the released parties**, unless pursuant to a valid subpoena or court order to produce documents or testify, or unless you have been requested by an agency of the United States government or state or local government (collectively "government agency") to assist in a government agency investigation or proceeding.  To the extent that you are requested by any government agency to participate or assist in a government agency investigation or proceeding, or to the extent that any law may prohibit you from waiving your right to bring or participate in the investigation of a claim, you nevertheless waive any right you otherwise might have to seek or accept any damages or release in any proceeding.  Furthermore, to the extent that you file any claim against Freddie Mac or any claim is filed on your behalf against Freddie Mac, you agree not to seek or accept any damages or other relief as a result of such claims.[4]

George Decl., ¶6; *see also* Dkt. No. 107, at p. 13.

The plain language of the "Non Participation" clause is egregious because it purports to

prohibit former employees **from essentially doing anything** to assist victims and potential claimants

in investigating, bringing, or prosecuting any claims regarding Defendants' securities fraud.  This is

precisely the sort of clandestine misconduct Defendants employed in lying to the market and

investors in the first place, resulting in billions of dollars of damages.

---

[4]        Emphasis is added and citations and quotations are omitted unless otherwise noted.

**B.      The "Non Participation" Clause Has Thwarted Plaintiffs' Investigators**

To be sure, there is myriad evidence of the brutal effectiveness and ingenuity of the "Non Participation" clause.  As demonstrated below, Freddie Mac's former employees want to do the right thing—they want to "encourage, counsel or assist" Plaintiffs in prosecuting this case by discussing the truth, as well as the facts underlying Defendants' fraud, with Plaintiffs' investigators.  Despite their willingness to talk, they fear what Freddie Mac will do if they speak the truth.

**1.      Seven Former Employees Declined Interviews with Hirsch**

Hirsch contacted seven former Freddie Mac employees who declined interviews because of the "Non Participation" clause.  Hirsch Decl., ¶¶9-15.  The first former employee likely has information related to "the risks" that "new loan products represented for Freddie Mac." *Id.* at ¶9. Another former employee who declined an interview likely has information directly related to the knowledge of Freddie Mac's top executives about potential losses related to subprime loans.  *Id*. at ¶10.

Likewise, another former employee who declined an interview likely has information about how Freddie Mac performed valuation analyses on the subprime securities. *Id*. at ¶11.  Additionally, a fourth former employee declined to be interviewed because of the "Non Participation" clause, despite the fact the former employee likely has information relative to the functioning of the Company's underlying debt and derivative accounting platforms. *Id*. at ¶12.

A fifth former employee who declined to speak with Hirsch may have knowledge about the extent to which banks were able to secure deviations from Freddie Mac published underwriting requirements.  *Id*. at ¶13.  A sixth former employee who declined to speak wit Hirsch may be able to provide information about the pricing and market for subprime loans, wholesale deals and securities

as well as insights into how those prices changed as subprime default rates increased during the class period. *Id*. at ¶14.

Finally, a seventh former employee who declined to speak with Hirsch may be able to provide information about default risks and Freddie Mac exposure to non-performing loans, as well as changes to Freddie Mac's underwriting rules that allowed the Company to take on more risk than was disclosed to shareholders. *Id*. at ¶15.

Each of these former employees likely had information directly relevant and related to issues in this case, but were hamstrung by the "Non Participation" clause imposed by Freddie Mac.

## 2.      Two Former Employees Declined Interviews with Hoffman

Like Hirsch, Hoffman had two former Freddie Mac employees decline interviews because of the "Non Participation" clause.  One of the former employees may have information related to, among other things, the disclosures Freddie Mac made to its investors concerning the value and performance of loans and securities in its portfolio, and how those disclosures compared with internal reports and data on these matters.  Hoffman Decl., ¶9.  Specifically, Hoffman states:

> I believe the former employee can provide factual details about the company's policies, practices and decision-making concerning its core business operations, which include its residential mortgage lending, securitization, funding, investment, and retained portfolio activities.  In particular, the former employee would be able to provide specific factual information about the disclosures Freddie Mac made to its investors concerning the value and performance of loans and securities in its portfolio during the Class Period (November 20, 2007 through September 7, 2008), and how those disclosures compared with internal reports and data on these matters.

*Id.*

The other former employee who declined an interview due to the "Non Participation" clause likely has information about critical gaps in two accounting systems that prevented the Company from accurately and completely accounting for the risks involved in the non-prime loans it purchased

and securitized, besides other information.  *Id*. at ¶10.  These issues are also clearly relevant to Plaintiffs' claims.

### 3.    Eight Former Employees Declined Interviews with Monty

Monty had eight former Freddie Mac employees decline interviews as a result of the "Non Participation" clause.  Monty Decl., ¶¶9-16.  One former employee who refused an interview likely has information regarding the financial reporting process underlying the fraud at issue in this case. *Id*. at ¶10.

Also declining an interview with Monty based on the "Non Participation" clause was a former employee who likely has information related to key developments involving the purchase of non-prime mortgages and securities.  *Id*. at ¶13.  Another former employee who refused an interview with Monty likely has information about Freddie Mac's efforts to assess the quality of loans purchased through various types of transactions, and information related to the Company's use of mortgage due diligence analyses prepared by Clayton Group.  *Id*. at ¶14.

Moreover, a former employee who may have information about the risks identified in a series of meetings that were held in approximately August 2007 and how Freddie Mac digested those risks in terms of its internal controls and subsequent public representations declined to be interviewed. *Id*. at ¶15.

Yet another former employee also declined an interview with Monty despite likely having information about, among other things, end-user computing processes at Freddie Mac, control deficiencies pertaining to these processes, and details regarding the accuracy of data developed through the use of end-user computing and reported publicly.  *Id*. at ¶16.

Likewise, Monty had a former employee who likely has a wealth of information relating to the internal controls underlying the fraud alleged here decline to be interviewed. *Id*. at ¶11.  Another former employee who also declined an interview likely has information related to efforts by Freddie

Mac to track loan delinquencies, qualification of servicers of loans held and guaranteed by Freddie Mac, and reports to Freddie Mac from the servicers, among other things. *Id*. at ¶12. A different former employee who declined an interview, likely has information, among other things, about efforts to interface various databases in use at Freddie Mac, the flow of data between systems, and whether such processes created vulnerabilities or potential inaccuracies in the final data. *Id*. at ¶9.

### 4. Five Former Employees Declined Interviews with Neely

The first former employee who refused to speak with Neely due to the "Non Participation" clause may have information concerning the software application that Freddie Mac employed to assess its internal controls over Freddie Mac's internal governance policies and practices, risk management, and compliance with various regulatory requirements applicable to Freddie Mac's operations. Neely Decl., ¶9.

Another former employee who declined an interview with Neely likely has information about Freddie Mac's purchase and sale of mortgage-backed securities from third parties. *Id*. at ¶10. Additionally, a former employee who refused an interview may have information concerning the new computer systems that Freddie Mac was developing and attempting to implement in order to be able to provide the SEC and its shareholders with accurate and complete financial reporting data and data on the Company's credit risk levels. *Id*. at ¶11.

Likewise, Neely was unable to speak with a former Freddie Mac employee who likely has information regarding software implementation projects intended to remediate internal control deficiencies, and about an audit finding that prevented registration with the SEC. *Id*. at ¶12. Finally, yet another former employee refused to speak with Neely due to the "Non Participation" clause who may have information about Freddie Mac's valuation models for loans, mortgage-backed securities , and other assets, and material deficiencies known to the individual defendants. *Id*. at ¶13.

     **5.**     **Freddie Mac's "Non Participation" Clause Has Been Effective In Hiding the Truth**

Clearly, as demonstrated by the declined interviews experienced by each of Plaintiffs' investigators, Freddie Mac has succeeded, through the use of the "Non Participation" clause, in its plan to obstruct any efforts to discover the facts underlying Defendants' fraud.  Indeed, the "Non Participation" clause has caused one of the most prolific decline rates of any investigations Hirsh has undertaken.  George Decl., ¶7; Hirsch Decl., ¶14.

**III.**    **ARGUMENT**

     **A.**     **Companies Accused of Committing Securities Fraud Cannot Prevent PSLRA Plaintiffs from Communicating with Former Company Employees about Non Privileged and Non Confidential Information Relating to that Misconduct**

The seminal decision in this Circuit on the issue of *ex parte* communication with witnesses is *IBM v. Edelstein*, 526 F.2d 37 (2d Cir. 1975).  In *IBM*, the Second Circuit struck down (then) Chief Judge Edelstein's order to IBM's attorneys dealing with witness interviews, which stated:

> [T]hat if any one of you seeks to interview a witness in the absence of opposite counsel, that you do it with a stenographer present and so that it can be available to the Court, for the Court to see it, and I think that is the kind of condition that I would ask you to live up to.

*IBM*, 526 F.2d at 41.

In overturning Judge Edelstein's order on *ex parte* witness interviews, the Second Circuit held, in very plain terms:

> We believe that the restrictions on interviewing set by the trial judge exceeded his authority.  They not only impair the constitutional right to effective assistance of counsel but are contrary to ***time-honored and decision-honored principles, namely, that counsel for all parties have a right to interview an adverse party's witnesses (the witness willing) in private***, without the presence or consent of opposing counsel and without a transcript being made.

*Id.*

- 10 -

Since *IBM*, courts have faced the issue of witness interviews in the context of confidentiality agreements between former employees and a company alleged to have engaged in wrongdoing.  For instance, in ruling that the plaintiff was able to conduct *ex parte* witness interviews with former employees, the Honorable Vincent L. Broderick held that

> [Agreements] obtained by employers requiring former employees to remain silent about underlying events leading up to disputes, or concerning potentially illegal practices when approached by others can be harmful to the public's ability to rein in improper behavior, and in some contexts ability of the United States to police violations of its laws.
>
> *         *         *
>
> Here, plaintiff would plainly be adversely affected by his inability to secure through depositions ***or pre-deposition interviews*** in connection with the present litigation, information relevant to his claim, whereas former employees paid for an agreement to keep silent might have little interest in challenging the agreement.

*Chambers v. Capital Cities/ABC*, 159 F.R.D. 441, 444-45 (S.D.N.Y. 1995).

Even in the context of the PSLRA, courts addressing the issue have also concluded that plaintiffs are able to conduct *ex parte* witness interviews.  For instance, the court in *In re JDS Uniphase Corp. Sec. Litig.*, 238 F. Supp. 2d 1127, 1137-38 (N.D. Cal. 2002), found that confidentiality agreements binding former employees did not govern non trade secret information relating to alleged securities fraud, and tersely stated: "[The company] cannot use its confidentiality agreements to chill former employees from voluntarily participating in legitimate investigations into alleged wrongdoing by [the company.]"  *See also In re Flir Sys., Inc. Sec. Litig.*, No. Civ. 00-360-HA, 2000 WL 33201904, at *3 (D. Or. Dec. 13, 2000) ("The PSLRA is a shield intended to protect security-fraud defendants from costly discovery requirements, not to be a sword with which defendants can destroy the plaintiffs' ability to obtain information from third parties who are otherwise willing to disclose it.").

Similarly, invoking the wisdom of the Second Circuit in the seminal *IBM* case, the court in *In re Tyco Int'l. Ltd. Sec. Litig.*, No. 00-MD-1335-B, 2001 WL 34075721, at *1-*4 (D.N.H. Jan. 30, 2001), denied the company's protective order to prohibit the plaintiffs from interviewing former employees. In its analysis, the court stated as follows:

> Defense counsel previously convinced the Second Circuit Court of Appeals that restrictions on witness interviews by counsel could "impair the constitutional right to effective assistance of counsel" and that this activity is part of "time-honored and decision-honored principles, namely, that counsel for all parties have a right to interview an adverse party's witnesses (the witness willing) in private, without the presence or consent of opposing counsel . . ." *IBM v. Edelstein*, 526 F.2d 37, 42 (1975). **The court in IBM got it right. The right to conduct such investigations is protected and is not impaired by the PSLRA**.

*In re Tyco*, 2001 WL 34075721, at *3.

*Ex parte* interviews are clearly permissible and an integral part of investigations like the one undertaken by Plaintiffs' investigators here. Given the fact that *ex parte* interviews are clearly permissible, it is essential to the administration of justice and the protection of shareholder rights that companies accused of committing securities fraud cannot prevent communication with former employees about non-privileged and non-confidential information relating to that fraud.[5]

---

[5]     The federal witness tampering statute, 18 U.S.C. §1512, and its state corollaries are also noteworthy. For, while Plaintiffs do not currently have a basis for contending that the force and effect of Freddie Mac's "Non Participation" clause is akin to witness tampering, or that the Defendants have otherwise engaged in witnesses tampering, such misconduct can clearly take place within the context of confidentiality agreements. *See, e.g.*, *United States v. Hasson*, 333 F.3d 1264, 1268 (11th Cir. 2003) (convictions upheld where, in the course of conduct, the defendant was accused of "creating false scenarios to induce purchases; and covering up the scheme by blaming employees and settling fraud claims under confidentiality agreements."); *accord McGrane v. Reader's Digest Ass'n, Inc.*, 822 F. Supp. 1044, 1046 (S.D.N.Y. 1993) ("Again at the federal level, where criminal wrongdoing and at times other misconduct are involved, arrangements to 'cover up' may violate 18 U.S.C. §3 (accessory after the fact), §4 (misprision of felony), §371 (conspiracy to defraud the United States), §§1341-1346 (mail and other fraud), §§1501-1517 (obstruction of justice) or other specific statutes including the Internal Revenue Code.").

Stated differently, were companies and other defendants engaging in securities fraud permitted to silence any former employees with information related to that fraud with the type of "Non Participation" clause at issue here, then it would become exceedingly difficult for investors, like Plaintiffs, to pursue remedies under the PSLRA. Indeed, unless Freddie Mac's "Non Participation" clause is struck down by this Court, it would create a perverse incentive for public companies and their officers and directors to commit securities fraud with the comfort that such fraud could not be uncovered *vis-à-vis* non-confidential, non-privileged information from honest former employees. This is precisely the type of incentive that should be extinguished. To be sure, the PSLRA was **never** designed to create this type of incentive.

### B.   Information From Confidential Witnesses Can Be An Important Part of Satisfying the PSLRA's Heightened Pleading Requirements

In *Novak v. Kasaks*, 216 F.3d 300, 314 (2d Cir. 2000), the Second Circuit recognized the importance of confidential witnesses in establishing securities fraud under the PSLRA:

> Accordingly, where plaintiffs rely on confidential personal sources but also on other facts, they need not name their sources as long as the latter facts provide an adequate basis for believing that the defendants' statements were false. Moreover, even if personal sources must be identified, there is no requirement that they be named, provided they are described in the complaint with sufficient particularity to support the probability that a person in the position occupied by the source would possess the

Regardless, there is a long line of precedent expressly negating the enforcement of agreements that further the interests of a criminal enterprise or otherwise prevent enforcement of statutory rights. *See Hoffman v. Sbarro, Inc.*, No. 97 CIV. 4484(SS), 1997 WL 736703, at *1 (S.D.N.Y. Nov. 26, 1997) ("To the extent that the agreement might be construed as requiring an employee to withhold evidence relevant to litigation designed to enforce federal statutory rights, it is void."); *Branzburg v. Hayes*, 408 U.S. 665, 696-97 (1972) ("[C]oncealment of crime and agreements to do so are not looked upon with favor."); *Town of Newton v. Rumery*, 480 U.S. 386, 392 (1987) ("a promise is unenforceable if the interest in its enforcement is outweighed in the circumstances by a public policy harmed by enforcement of the agreement"); *accord Roberts v. United States*, 445 U.S. 552, 557 (1980) ("Concealment of crime has been condemned throughout our history. The citizen's duty to "raise the 'hue and cry' and report felonies to the authorities," was an established tenet of Anglo-Saxon law at least as early as the 13th century.").

information alleged.  In both of these situations, the plaintiffs will have pleaded enough facts to support their belief, even though some arguably relevant facts have been left out.  Accordingly, a complaint can meet the new pleading requirement imposed by paragraph (b)(1) by providing documentary evidence and/or a sufficient general description of the personal sources of the plaintiffs' beliefs.

Thus, we find no requirement in existing law that, in the ordinary course, complaints in securities fraud cases must name confidential sources, and we see no reason to impose such a requirement under the circumstances of this case.  "The primary purpose of Rule 9(b) is to afford defendant fair notice of the plaintiff's claim and the factual ground upon which it is based."  *Ross v. Bolton*, 904 F.2d 819, 823 (2d Cir. 1990).  This purpose, which also underlies paragraph (b)(1), can be served without requiring plaintiffs to name their confidential sources as long as they supply sufficient specific facts to support their allegations.  ***Imposing a general requirement of disclosure of confidential sources serves no legitimate pleading purpose while it could deter informants from providing critical information to investigators in meritorious cases or invite retaliation against them***.

It is, therefore, beyond dispute that the information Plaintiffs' investigators have been inhibited from obtaining due to the "Non Participation" clause plays an integral part in this securities fraud case.  *Accord In re PXRE Group, Ltd., Sec. Litig.*, 600 F. Supp. 2d 510, 526 (S.D.N.Y. 2009) ("Accordingly, the Court assumes all facts alleged in Plaintiff's PSAC to be true, including those facts provided by the four Confidential Informants."); *In re Xethanol Corp. Sec. Litig.*, No. 06 Civ. 10234(HB), 2007 WL 2572088, at *3 n.3 (S.D.N.Y. Sept. 7, 2007) (descriptions of confidential sources were sufficient to allow the court "to infer that the witnesses are likely to posses the information contained in their statements"); *In re Scottish Re Group Sec. Litig*., 524 F. Supp. 2d 370, 378 (S.D.N.Y. 2007) (denying motion to dismiss where four confidential witnesses, who were former employees of the defendant, asserted precisely the controls the defendant was lacking, and how that impacted the defendant's ability to function as an insurance company).

### C.  Communication with Former Company Employees About Securities Fraud Is Not "Discovery" For the Purposes of the PSLRA

A corollary of the cases cited above demonstrating that *ex parte* interviews with a company's former employees about non-privileged, non-confidential topics relating to alleged securities fraud

are proper under the PSLRA is that such interviews are not "discovery" for the purposes of the

PSLRA's stay.  For instance, the court in *In re JDS* succinctly stated:

> By filing this motion, however, plaintiffs are not seeking discovery in the ordinary
> sense of the word.  In essence, what the plaintiffs are asking for is an order from the
> Court allowing former [company] employees to speak voluntarily to plaintiffs' lead
> counsel about certain topics without fear of breaching [the company's]
> confidentiality agreements.  This is not discovery, because plaintiffs are not using
> court process to require these third parties to provide information about the lawsuit.
> Instead, plaintiffs are merely seeking an order that would allow former employees to
> speak voluntarily if they wish to do so.

238 F. Supp. 2d at 1133.

Likewise, in another leading case on the application of *IBM* in the context of the PSLRA, the

court in *In re Tyco* held:

> Congress, in its enactment of the PSLRA, understood what discovery is and that is
> what it put a hold upon.  A review of the House and Senate record reveals that
> Congress intended to put "... requests for voluminous documents and time consuming
> depositions of company CEOs and other key employees" on hold "... until the judge
> rules on whether the case should be kicked out of court."  There is not the slightest
> hint in the congressional record that the discovery stay was intended to apply to
> either parties' own investigation.
>
>                      \*      \*      \*
>
> Neither logic, tradition, the constitution nor the PSLRA prohibit interviewing
> prospective witnesses. This court will not prohibit such interviews either.

2001 WL 34075721, at \*3.

Therefore, PSLRA plaintiffs are permitted to interview former company employees about

non-privileged, non-confidential information relating to securities fraud, without offending the

statutorily-required stay of discovery.

**D.   This Court Should Enter an Order Declaring the "Non Participation"
Clause Unenforceable And Requiring Freddie Mac to Inform Former
Employees That They Are Not Bound By the "Non Participation"
Clause**

The sworn testimony from Hirsch, Hoffman, Monty, and Neely, described above and attached in full hereto, definitively demonstrates that: 1) Freddie Mac's former employees have non-privileged, non-confidential information directly related to Plaintiffs' claims and the securities fraud alleged here; and 2) the "Non Participation" clause is having its intending chilling effect, as already twenty-two former employees described by Plaintiffs' investigators declined to be interviewed about that information because of the "Non Participation" clause in their severance agreements.  No doubt this trend will continue.

Therefore, in order to prevent Freddie Mac and the other Defendants here from continuing to strong-arm former employees and hide their fraudulent misconduct from Plaintiffs, their counsel and their investigators, Plaintiffs respectfully ask this Court to declare the "Non Participation" clause unenforceable.

Moreover, in order to give that ruling viable effect and meaningful enforcement, Plaintiffs also ask this Court to require Freddie Mac to send all former employees subject to the "Non Participation" clause (or any substantially similar derivative thereof) a letter notifying them that the "Non Participation" clause has been struck down by the Court as unenforceable and does not prohibit them from discussing with Plaintiffs (through their counsel and/or investigators) the information related to the securities fraud alleged in this case, an exemplary version of which is attached as **Exhibit "A."**  Indeed, the court in *Chambers* described precisely the import and impact of the notification Plaintiffs submit to this Court for approval: "Defendant's assurance to the former employees will authorize the employees to talk with plaintiff's counsel directly without fear of adverse consequences, while indicating that they are not required to do so." 159 F.R.D. at 446.

- 16 -

## IV.      CONCLUSION

WHEREFORE, based on the foregoing, undersigned counsel respectfully requests this Court

grant this motion, declare the "Non Participation" clause unenforceable and require Freddie Mac to

notify its former employees accordingly, and to grant such further relief as it deems just and proper.

DATED:  July 22, 2009

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
PAUL J. GELLER
DAVID J. GEORGE
ROBERT J. ROBBINS
JAMES L. DAVIDSON


                    */s/ David J. George*
                 DAVID J. GEORGE

120 E. Palmetto Park Road, Suite 500
Boca Raton, FL  33432-4809
Telephone:  561/750-3000
561/750-3364 (fax)
pgeller@csgrr.com
dgeorge@csgrr.com
rrobbins@csgrr.com
jdavidson@csgrr.com

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@csgrr.com

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
ERIK D. PETERSON
DARRYL J. ALVARADO
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
epeterson@csgrr.com
dalvarado@csgrr.com

***Lead Counsel for Plaintiffs***

- 17 -

O'DONOGHUE & O'DONOGHUE LLP
LOUIS P. MALONE III
4748 Wisconsin Avenue, N.W.
Washington, D.C.  20016
Telephone:  202/362-0041
202/362-2640 (fax)
lmalone@odonoghuelaw.com

***Co-Counsel for National Elevator Industry
Pension Plan and the Class***

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on July 22, 2009, a true and correct copy of the foregoing was

sent via Facsimile and FedEx to the following:

Kent A. Yalowitz, Esq.
ARNOLD & PORTER LLP
399 Park Avenue
New York, NY  10022-4690
Tel: (212) 715-1000
Fax: (212) 715-1399

**Attorneys for Federal Housing Finance Agency**

Russell Lawrence Lippman, Esq.
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY  10036-8704
Tel: (212) 596-9000
Fax: (212) 596-9090

**Attorneys for Richard Syron, Patricia L. Cook, and Anthony S. Piszel**

Jordan D. Hershman, Esq.
BINGHAM MCCUTCHEN LLP
One Federal Street
Boston, MA  02110-1726
Tel: (617) 951-8000
Fax: (617) 951-8736

**Attorneys for Federal Home Loan Mortgage Company**

/s/ David J. George
David J. George