**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JINO KURIAKOSE, Individually and On Behalf of
All Others Similarly Situated,

                                Plaintiff,

        v.

FEDERAL HOME LOAN MORTGAGE
COMPANY, RICHARD SYRON, PATRICIA L.
COOK, and ANTHONY S. PISZEL,

                          Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 1:08-cv-7281 (JFK)

DEFENDANT FREDDIE MAC'S
OPPOSITION TO PLAINTIFFS'
MOTION TO DECLARE
UNENFORCEABLE THE "NON
PARTICIPATION" CLAUSE IN
FREDDIE MAC'S SEVERANCE
AGREEMENTS

# TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................... 1

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ............................................................................................................ 4

I.    THIS COURT SHOULD DENY PLAINTIFFS' MOTION BECAUSE PLAINTIFFS LACK STANDING, THEY IMPERMISSIBLY SEEK AN ADVISORY OPINION, AND THEY FAIL TO MEET THE STANDARD FOR A MANDATORY INJUNCTION ......................................... 4

    A.    Plaintiffs Lack Standing To Seek A Declaration Regarding The Alleged Contractual Provision .................................................. 4

    B.    Plaintiffs Impermissibly Seek An Advisory Opinion ................................ 5

    C.    Plaintiffs Do Not Satisfy The Standard For A Mandatory Injunction ........................................................................................... 7

II.    PLAINTIFFS FAIL TO ESTABLISH THAT THE SAMPLE NON-PARTICIPATION CLAUSE IS VOID AS AGAINST PUBLIC POLICY ......... 8

    A.    Virginia Courts Are Averse To Holding Contracts Unenforceable On The Grounds Of Public Policy ............................................................ 8

    B.    The Sample "Non-Participation" Clause Is Consistent With Public Policy ........................................................................................ 10

    C.    Plaintiffs' Cases Are Distinguishable ..................................................... 13

    D.    A Declaration That "Non-Participation" Clauses Are Unenforceable Would Contravene Public Policy ................................... 15

CONCLUSION ....................................................................................................... 18

A/73116159.9

# TABLE OF AUTHORITIES

## FEDERAL CASES

380544 Canada, Inc. v. Aspen Tech., Inc.,
    No. 07-1204, 2007 WL 2049738 (S.D.N.Y. July 18, 2007)................................................3

Altman v. Bedford Cent. School Dist.,
    245 F.3d 49 (2d Cir. 2001)..............................................................................................5

Amari Co. v. Burgess,
    546 F. Supp. 2d 571 (N.D. Ill. 2008) ......................................................................6, 11, 16

ATSI Commc'ns Inc. v. Shaar Fund, Ltd.,
    493 F.3d 87 (2d Cir. 2007)..............................................................................................2

Chambers v. Capital Cities/ABC,
    159 F.R.D. 441 (S.D.N.Y. 1995) ...............................................................................5, 14

Clune v. Publishers' Ass'n of New York City,
    214 F. Supp. 520 (S.D.N.Y. 1963)....................................................................................7

Cooper Tire & Rubber Co. v. Farese,
    423 F.3d 446 (5th Cir. 2005) ................................................................10, 11, 12, 13, 17

Eaton Vance Mgmt. v. ForstmannLeff Assocs.,
    No. 06 Civ. 1510 (WHP), 2006 WL 2331009 (S.D.N.Y. Aug. 11, 2006)..........................4

In re Flir Systems, Inc. Sec. Litig.,
    No. 00-360-HA, 2000 WL 33201904 (D. Or. Dec. 13, 2000)...........................................14

Higginbotham v. Baxter Int'l,
    495 F.3d 753 (7th Cir. 2007) ..........................................................................................16

In re JDS Uniphase Corp. Sec. Litig.,
    238 F. Supp. 2d 1127 (N.D. Cal. 2002) .................................................................5, 13, 14

John Labatt Ltd. v. Onex Corp.,
    890 F. Supp. 235 (S.D.N.Y. 1995)................................................................................7, 8

Lentell v. Merrill Lynch & Co.,
    396 F.3d 161 (2d Cir. 2005)............................................................................................2

Ley v. Visteon Corp.,
    543 F.3d 801 (6th Cir. 2008) ..........................................................................................16

ii

TABLE OF AUTHORITIES
(CONT'D)

Page(s)

Lujan v. Defenders of Wildlife,
      504 U.S. 555 (1992)......................................................................................4

North Carolina v. Rice,
      404 U.S. 244 (1971).......................................................................................5

Ope Shipping Ltd. v. Allstate Ins. Co.,
      687 F.2d 639 (2d Cir. 1982) ........................................................................4

Saini v. Int'l Game Tech.,
      434 F. Supp. 2d 913 (D. Nev. 2006)..........................................................11

Sarantakis v. Gruttaduaria,
      No. 02-1609, 2002 WL 1803750 (N.D. Ill. Aug. 5, 2002) .............................15

In re Spectrum Brands, Inc. Sec. Litig.,
      No. 1:05-cv-02494-WSD, 2007 WL 1483633 (N.D. Ga. May 18, 2007) .........6, 11, 13, 15

Tasini v. New York Times Co.,
      184 F. Supp. 2d 350 (S.D.N.Y. 2002) .........................................................4

Tellabs, Inc. v. Makor Issues & Rights, Ltd.,
      551 U.S. 308 (2007).....................................................................................16

Tri-Star Pictures, Inc. v. Leisure Time Prods., B.V.,
      749 F. Supp. 1243 (S.D.N.Y. 1990) ...........................................................4

In re Tyco Int'l Ltd. Sec. Litig.,
      No. 00-MD-1335-B, 2001 WL 34075721 (D.N.H. Jan. 30, 2001)...................15

In re Vic Supply Co.,
      227 F.3d 928 (7th Cir. 2000) ......................................................................4

Williams v. Bayer Corp.,
      982 F. Supp. 120 (D. Conn. 1997)..............................................................11

Xerox Corp. v. Media Sciences, Inc.,
      609 F. Supp. 2d 319 (S.D.N.Y. 2009)........................................................8, 9

Yockey v. Horn,
      880 F.2d 945 (7th Cir. 1989) .......................................................9, 10, 11, 13

Zanders v. National R.R. Passenger Corp.,
      898 F.2d 1127 (6th Cir. 1990) ....................................................................11

iii

TABLE OF AUTHORITIES
(CONT'D)

Page(s)

## STATE CASES

Blue Ridge Anesthesia and Critical Care, Inc. v. Gidick,
        389 S.E.2d 467 (Va. 1990)...............................................................................9, 10

Burke v. Burke,
        662 S.E.2d 622 (Va. Ct. App. 2008) ...............................................................10

Estes Express Lines, Inc. v. Chopper Express, Inc.,
        641 S.E.2d 476 (Va. 2007)...........................................................................8, 9, 10

Gordonsville Energy v. Virginia Elec. and Power,
        512 S.E.2d 811 (Va. 1999)...................................................................................9

Lehman v. Lehman,
        567 S.E.2d 571 (Va. 2002)...................................................................................8

Therapy Servs., Inc. v. Crystal City Nursing Ctr., Inc.,
        389 S.E.2d 710 (Va. 1990)..................................................................................10

Ulloa v. Qsp, Inc.,
        624 S.E.2d 43 (Va. 2006)......................................................................................9

W. R. Hall, Inc. v. Hampton Roads Sanitation Dist.,
        641 S.E.2d 472 (Va. 2007)....................................................................................9

## STATUTES AND LEGISLATIVE HISTORY

15 U.S.C. § 78u-4(b)(3)(B)..........................................................................................3

S. Rep. No. 104-98 at 14 (1995) ................................................................................15

A/73116159.9

## INTRODUCTION

Defendant Federal Home Loan Mortgage Corporation ("Freddie Mac")[1] hereby submits this Memorandum of Law in Opposition to Lead Plaintiff's Motion to Declare Unenforceable the "Non-Participation" Clause in Freddie Mac's Employee Severance Agreements (the "Motion").

## PRELIMINARY STATEMENT

Plaintiffs' Motion should be denied because Plaintiffs lack standing to assert it, Plaintiffs' position has no support in governing Virginia law, Plaintiffs' argument is inconsistent with applicable public policy, and Plaintiffs have failed to meet the high standard justifying the grant of a mandatory injunction.

In their Motion, Plaintiffs seek a declaration that contractual clauses that may appear in some severance agreements between Freddie Mac and some unspecified former employees are void as against public policy. Further, Plaintiffs ask this Court to impose a mandatory injunction on Freddie Mac, requiring it to notify all of its former employees who are parties to severance agreements that these clauses are unenforceable. For numerous reasons, Plaintiffs' Motion should be denied.

To begin, Plaintiffs have no standing to assert that clauses between Freddie Mac and third parties are not enforceable, as they are not parties to those contracts and fail to point to any actual (as opposed to speculative) injury they will suffer. In addition, because they do not even allege that the sample provision that they quote is actually from a Freddie Mac severance agreement, Plaintiffs impermissibly seek an advisory opinion from this Court about contracts that are not actually before it. Notably, Plaintiffs state only that "[o]n information and belief" the clauses in Freddie Mac severance agreements "contain substantially" the language in their sample. Declaration of David J. George ("George Decl.") ¶ 6. Federal courts are constitutionally loath to resolve matters when not all parties are involved in the controversy or to issue advisory opinions in advance of any concrete dispute between the parties to that dispute.

---

[1] Freddie Mac has been under the conservatorship of the Federal Housing Finance Agency since September 6, 2008.

Moreover, Virginia law, which applies here, does not support the grant of Plaintiffs' Motion. Clauses of the sort challenged by Plaintiffs -- so-called "Non-Participation" clauses -- are not void as against any Virginia public policy, and the laws of other States are in accord. Such contractual provisions are common and conventional. It is typical for companies to seek peace with departing employees and to obtain not only general releases but also a commitment from the departing employee not to assist others in litigation efforts against the company. As courts have held, any public policy interest in freeing former employees to disclose an actual fraud is served by carve-outs in these contractual commitments that allow the contracting former employee to speak to government investigators and to respond to civil legal process. This is why courts enforce non-participation clauses that include exceptions allowing employees to assist in governmental investigations and respond to legal process, see infra pp. 10-13, but sometimes find void for public policy reasons clauses that contain a flat ban on communication. See infra pp. 13-14. The single sample clause that Plaintiffs have provided to this Court contains the very exceptions that save non-participation clauses from the declaration of voidness that Plaintiffs urge this Court to pronounce.

Indeed, public policy, codified in the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), actually militates in favor of denying Plaintiffs' Motion. Congress enacted the PSLRA because the plaintiffs class action bar has long asserted conclusory and often meritless fraud claims in the aftermath of any sharp drop in an issuer's stock price. As the Second Circuit has observed: "[T]he congressional intent of the PSLRA [is] to deter strike suits wherein opportunistic private plaintiffs file securities fraud claims of dubious merit in order to exact large settlement recoveries." Lentell v. Merrill Lynch & Co., 396 F.3d 161, 171 (2d Cir. 2005) (citation and quotation omitted). Further, the mere pendency of a fraud claim can do great harm to the reputation of a defendant. See, e.g., ATSI Commc'ns Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir. 2007) (noting that the strict pleading standards applicable to securities fraud claims are designed, inter alia, to "safeguard [a defendant's] reputation from improvident charges of wrongdoing, and protect him against strike suits"). A contractual clause that prevents a

2

former employee from assisting the plaintiffs bar in bringing a strike suit does not hinder public policy; it promotes it by minimizing the likelihood that frivolous cases are filed.  That is particularly the case where, as here, the contractual clause at issue contains exceptions permitting a former employee to assist in governmental investigations and respond to legal process.

At bottom, this motion is just another effort by Plaintiffs to fish for facts to support their securities strike suit.  As this Court is aware, the PSLRA expressly provides that "all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss." 15 U.S.C. § 78u-4(b)(3)(B).  Unable to find any concrete evidence of fraud in the course of the over 100 interviews that Plaintiffs have allegedly conducted, in April 2009, eight months after they filed this fraud case, Plaintiffs filed a motion to partially lift the discovery stay (the "Discovery Motion").  Citing the same cases they cite in this Motion, Plaintiffs argued in their Discovery Motion that the "Non Participation" clauses in Freddie Mac's severance agreement caused an undue hardship, which could "be rectified" if this Court lifted the mandatory discovery stay and required Freddie Mac to produce to Plaintiffs documents produced in allegedly ongoing governmental investigations.[2]  Discovery Motion at 1.  Strikingly, Plaintiffs' Discovery Motion was at odds with this Court's decision in 380544 Canada, Inc. v. Aspen Tech., Inc., No. 07-1204, 2007 WL 2049738 (S.D.N.Y. July 18, 2007), which Plaintiffs neglected to cite in their Discovery Motion.

Plaintiffs now seek yet another path to the fishing hole.  Plaintiffs contend that public policy requires a declaration that all "non participation" clauses are invalid, and they request that a mandatory injunction issue in their favor.  As explained above and in further detail below, Plaintiffs are wrong, and this Court should deny Plaintiffs' Motion.

---

[2] Contrary to Plaintiff's assertion in the Discovery Motion that these are "current, ongoing" government investigations, Discovery Motion at 1, the U.S. Attorney for the Southern District of New York withdrew its subpoena to Freddie Mac, and the inquiry is now being conducted by the US Attorney's Office for the Eastern District of Virginia.  See Freddie Mac 2008 10-K at 241 (Mar. 11, 2009), available at http://www.freddiemac.com/investors/er/pdf/10k_031109.pdf.

3

<u>**ARGUMENT**</u>

I.  **THIS COURT SHOULD DENY PLAINTIFFS'**
    **MOTION BECAUSE PLAINTIFFS LACK STANDING,**
    **THEY IMPERMISSIBLY SEEK AN ADVISORY OPINION, AND**
    <u>**THEY FAIL TO MEET THE STANDARD FOR A MANDATORY INJUNCTION.**</u>

    A.  **Plaintiffs Lack Standing To Seek A**
    <u>**Declaration Regarding The Alleged Contractual Provision.**</u>

As a general matter, a party cannot obtain a declaration respecting a contract to which he or she is not party. "Ordinarily, only a party (actual or alleged) to a contract can challenge its validity . . . . Obviously the fact that a third party would be better off if a contract were unenforceable does not give him standing to sue to void the contract." <u>In re Vic Supply Co.</u>, 227 F.3d 928, 930-31 (7th Cir. 2000); <u>see also</u> <u>Ope Shipping Ltd. v. Allstate Ins. Co.</u>, 687 F.2d 639, 642-43 (2d Cir. 1982) (third party lacked standing to challenge validity of contract); <u>Tasini v. New York Times Co.</u>, 184 F. Supp. 2d 350, 355-56 (S.D.N.Y. 2002) (same); <u>Tri-Star Pictures, Inc. v. Leisure Time Prods., B.V.</u>, 749 F. Supp. 1243, 1250 (S.D.N.Y. 1990) (same). As one court explained, a party seeking a declaratory judgment concerning a contract must have a right to enforce terms of that contract:

> [A] party bringing a declaratory judgment action must have been a proper party
> had the defendant brought suit on the underlying cause of action. Parties who
> lack standing to enforce an agreement also lack standing to seek a declaration of
> rights under the contract.

<u>Eaton Vance Mgmt. v. ForstmannLeff Assocs.</u>, No. 06 Civ. 1510 (WHP), 2006 WL 2331009, at *6 (S.D.N.Y. Aug. 11, 2006) (internal quotation marks and citation omitted). Plaintiffs are not parties to any of the agreements that they ask this Court to construe and declare, in part, void. Thus, the contractual obligations at issue here belong not to Plaintiffs, but to former employees of Freddie Mac. Plaintiffs do not assert otherwise.

Moreover, Plaintiffs cannot point to any actual (as opposed to speculative) injury they will suffer sufficient to confer standing. <u>See</u> <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992) (plaintiff must have suffered injury which is "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.") (internal quotation marks and citations

omitted); <u>Altman v. Bedford Cent. School Dist.</u>, 245 F.3d 49, 69-70 (2d Cir. 2001) (same). Plaintiffs allege in their Amended Complaint that they conducted "interviews with more than 100 former Freddie Mac employees and others with knowledge of the facts underlying Defendants' [alleged] fraud." Amended Complaint ("AC") ¶ 35; <u>see also</u> <u>id.</u> ¶¶ 36-62. Thus, their own allegations belie their claim that "substantial obstacles" have "inhibit[ed]" their investigation. Motion at 1. Furthermore, there is no indication that any of the former employees possess information about any alleged fraud committed by any Defendant. In other words, there is no indication that there is anything for Plaintiffs to uncover by further investigation. Certainly, there is no indication so strong as to justify the extraordinary remedy of imposing Plaintiffs' interests upon the contract rights of other parties.[3] In short, Plaintiffs already have conducted over 100 interviews, and there is no evidence that the minority of employees who have refused to talk to them possess any information about any supposed fraud.[4]

### B.    Plaintiffs Impermissibly Seek An Advisory Opinion.

In addition, Plaintiffs impermissibly seek an advisory opinion as to contractual language that is not before the Court. As the Supreme Court has explained: "To be cognizable in a federal court, a suit must be definite and concrete, touching the legal relations of parties having adverse legal interests. . . . It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." <u>North Carolina v. Rice</u>, 404 U.S. 244, 246

---

[3] Plaintiffs do not, for example, assert that any former employee has approached the government with information about securities fraud committed at Freddie Mac.

[4] Plaintiffs may respond that lack of standing was no bar to the courts' decisions in <u>Chambers v. Capital Cities/ABC</u>, 159 F.R.D. 441, 444-45 (S.D.N.Y. 1995), and <u>In re JDS Uniphase Corp. Sec. Litig.</u>, 238 F. Supp. 2d 1127 (N.D. Cal. 2002). The court in <u>JDS Uniphase</u>, however, failed to address standing at all. Thus, it does not serve as any authority for the proposition that Plaintiffs possess the requisite standing. The <u>Chambers</u> court observed that the plaintiff had sufficient standing to assert this issue in the context of a discovery dispute, even though he would not have had standing to pursue an action on the contract. 159 F.R.D. at 445. That observation, while superficially limiting the holding, ironically serves to extend it. In effect, that reasoning would allow a court to declare the rights to parties in mere discovery disputes when it lacks that same power in a full-fledged action. It would also allow the decision in discovery disputes to affect the obligations of contracting parties who did not participate in the discovery dispute.

5

(1971). Here, Plaintiffs offer only a hypothetical state of facts, requiring that this Court issue an advisory opinion.

In particular, Plaintiffs fail to cite any specific provision from any particular severance agreement between Freddie Mac and any identifiable former employee. Rather, Plaintiffs state only that "[o]n information and belief" the clauses in Freddie Mac severance agreements "contain substantially" the language in their sample. George Decl. ¶ 6. Courts refuse to issue advisory opinions regarding hypothetical contract language. See In re Spectrum Brands, Inc. Sec. Litig., No. 1:05-cv-02494-WSD, 2007 WL 1483633, at *4 (N.D. Ga. May 18, 2007) (denying securities plaintiffs' motion to clarify scope of confidentiality agreements, noting that because plaintiffs had failed to provide the court with a copy of the alleged confidentiality agreement, it risked "issu[ing] an impermissible advisory opinion").

In addition, Plaintiffs fail to assert unequivocally that any of the former employees it seeks to interview would consent to an interview even if permitted to do so. Indeed, Plaintiffs' affidavits are notable for the extent to which they contain admissions that the former employee severance agreements are only "**a** basis," and not "the" basis, that the former employees cited to avoid an interview. See, e.g., Motion Ex. 3 (Declaration of Desiree Monty) ¶ 9(a) (emphasis added). As described in Plaintiffs' Motion, these unidentified former employees are only hypothetically constrained: The severance clause language may be entirely superfluous when paired, for example, with an independent lack of interest to speak with Plaintiffs.[5] Without a former employee currently offering to speak to Plaintiff's investigators, there is no decree or injunction that can issue that would have any effect on the parties' rights.[6]

---

[5] Cf. Amari Co. v. Burgess, 546 F. Supp. 2d 571, 582 (N.D. Ill. 2008) ("This argument [that subpoenas are inadequate with respect to unknown witnesses who may not come forward for fear of being sued by defendants] begs the question, because it requires the Court to assume that the failure of former employees to emerge as witnesses can only be attributed to the improper chilling effect of the confidentiality agreements, rather than **some other reason** such as loyalty to a former employer, **mere indifference**, or the **non-existence of the evidence** Plaintiffs seek.") (emphasis added) (denying plaintiffs' motion for protective order to prevent alleged intimidation of witnesses).

[6] Also, none of the declarations contains even a hint of evidentiary matter that supports Plaintiffs' assertions that these former employees are "ready, willing and able to provide information that would expose Defendants' [alleged] fraud" or that "Freddie Mac's former employees want to do the right thing—they want to 'encourage counsel or assist' Plaintiffs in prosecuting this case by discussing the truth, as well as the facts

A/73116159.9

### C.     Plaintiffs Do Not Satisfy The Standard For A Mandatory Injunction.

This Court should be particularly reluctant to issue an advisory opinion here, where Plaintiffs also seek a mandatory injunction to enforce that opinion, in the form of the letter attached as Exhibit A to their Motion.  Plaintiffs do not even state in their request for relief that a "mandatory injunction" is what they seek, let alone satisfy the rigorous standards for obtaining such relief.  Courts are very reluctant to issue mandatory injunctions, and they refuse to do so absent a showing that a party is likely to suffer extreme or serious damage.  See John Labatt Ltd. v. Onex Corp., 890 F. Supp. 235, 244 (S.D.N.Y. 1995) ("Mandatory injunctions are not granted unless extreme or very serious damage will [otherwise] result and are not issued in doubtful cases.") (quotations and citations omitted); Clune v. Publishers' Ass'n of New York City, 214 F. Supp. 520, 531 (S.D.N.Y. 1963) ("It is . . . well known that courts are more reluctant to grant a mandatory injunction than a prohibitory one and that generally an injunction will not lie except in prohibitory form.  Such mandatory injunctions, however, are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages.").  Plaintiffs have not shown that "extreme or very serious damage" will result if a mandatory injunction is not issued here.

Indeed, the extent of their investigation to date would belie any such assertion.  Plaintiffs allege in their Amended Complaint that they have already conducted more than 100 interviews. AC ¶ 35.  Further, their Amended Complaint contains numerous allegations attributed to these supposed sources.  AC ¶¶ 36-62.  Yet Plaintiffs now maintain in the Motion that they are being "prevent[ed] . . . from conducting the very investigation required to satisfy the PSLRA."  Motion at 3.  The two assertions do not jibe.  On the one hand, Plaintiffs seek to support the Amended Complaint with a statement touting the extent of the information that they have gathered in their investigation.  On the other hand, they claim that they are hamstrung by allegedly pernicious contractual clauses.  Although it is true that Plaintiffs have yet to find any evidence of any fraud,

---

underlying Defendants' [alleged] fraud, with Plaintiffs' investigators.  Despite their willingness to talk, they fear what Freddie Mac will do if they speak the truth."  Motion at 1, 6.  Plaintiffs have not submitted any affidavit testimony from any former Freddie Mac employee supporting that allegation, nor is it supported by any of the declarations that they have submitted.

that is not because their investigation has been obstructed.  One hundred interviews is plainly a broad investigation.  That investigation's failure to yield a colorable claim speaks only to the baselessness of Plaintiffs' knee-jerk fraud allegations, not to any alleged obstruction.  Plaintiffs have not come close to establishing the sort of "extreme or very serious damage" that allows a court to issue a mandatory injunction.  John Labatt Ltd., 890 F. Supp. at 244.

In sum, Plaintiffs lack standing to seek a declaration that the hypothetical non-participation provision is unenforceable, and any such declaration would be an impermissible advisory opinion.

## II.    PLAINTIFFS FAIL TO ESTABLISH THAT THE SAMPLE NON-PARTICIPATION CLAUSE IS VOID AS AGAINST PUBLIC POLICY.

Plaintiffs are not entitled to a declaration that the so called "Non-Participation" clause is void as against public policy.  First, under Virginia law, courts are reluctant to declare that a contractual provision is void as against public policy, and they only do so when the clause's illegality is "clear and certain," which is not the case here.  Second, the "Non-Participation" clause does not violate any Virginia public policy, and the laws of other States are in accord.  Third, the few cases Plaintiffs do cite in an attempt to support their position are distinguishable.  Finally, the "Non-Participation" clause actually furthers the public policy that underlies the PSLRA.

### A.    Virginia Courts Are Averse To Holding Contracts Unenforceable On The Grounds Of Public Policy.

Pursuant to Virginia law, which is the governing law expressly chosen in contracts between Freddie Mac and its employees, "courts are averse to holding contracts unenforceable on the ground of public policy unless their illegality is clear and certain."  Estes Express Lines, Inc. v. Chopper Express, Inc., 641 S.E.2d 476, 478 (Va. 2007).  In fact, in Virginia, "[t]he presumption is against finding contracts void on public policy grounds."  Lehman v. Lehman, 567 S.E.2d 571, 574 (Va. 2002).  Indeed, courts generally do not hold contracts to be unenforceable on policy grounds without examining the specific contractual terms at issue and their context.  See, e.g., Xerox Corp. v. Media Sciences, Inc., 609 F. Supp. 2d 319, 325

(S.D.N.Y. 2009) ("[T]he Court is mindful that when a court is asked to strike down on grounds of public policy a contractual arrangement on its face consensual[,] cases are not decided, nor the law appropriately understood apart from an informed and particularized insight into the factual circumstances of the case.") (citations, internal quotation marks and alterations omitted).

None of the cases that Plaintiffs cite apply Virginia law. Plaintiffs effectively ask this Court to make new law in Virginia that is inconsistent with that Commonwealth's presumption against holding a negotiated agreement unenforceable on public policy grounds. Moreover, Plaintiffs have also not identified any Virginia public policy that the alleged Freddie Mac "Non-Participation" clause allegedly violates. See, e.g., Yockey v. Horn, 880 F.2d 945, 951 (7th Cir. 1989) (enforcing "promise not to voluntarily participate in litigation," as it did "not violate any public policy of Illinois").

When Virginia courts engage in an examination of the specific contractual terms and their context, they routinely reject arguments that contractual provisions are void as against public policy. See, e.g., Estes Express Lines, 641 S.E.2d at 478-80 (holding that contractual provision whereby party indemnifies itself against losses incurred as result of personal injury caused by its own future negligence is enforceable and does not violate public policy of the Commonwealth); W. R. Hall, Inc. v. Hampton Roads Sanitation Dist., 641 S.E.2d 472, 475 (Va. 2007) (holding that two indemnification provisions in construction contract entitling indemnitee to be reimbursed by indemnitor for liability for future acts of negligence causing personal injury are "not in violation of any public policy of the Commonwealth"); Ulloa v. Qsp, Inc., 624 S.E.2d 43, 48 (Va. 2006) (affirming enforceability of employment contract provision providing for elimination of damages as required element of breach of contract action as not contrary to public policy); Gordonsville Energy, L.P. v. Virginia Elec. and Power, 512 S.E.2d 811, 817-18 (Va. 1999) (holding that contractual provision waiving any defense as to validity of any liquidated damages stated in parties' agreement was enforceable and did not violate public policy); Blue Ridge Anesthesia and Critical Care, Inc. v. Gidick, 389 S.E.2d 467, 470 (Va. 1990) (holding that non-competition clause in employment contracts was not such a restriction that it offends public

9

policy and that trial court erred in finding agreement not valid and enforceable); Therapy Servs., Inc. v. Crystal City Nursing Ctr., 389 S.E.2d 710, 712 (Va. 1990) (finding provision in contract for services between two businesses restricting employment of certain employees for a period of time not against public policy); Burke v. Burke, 662 S.E.2d 622, 626-27 (Va. Ct. App. 2008) (holding no-appeal clause in property settlement agreement not against public policy).

      The factual circumstances of this case weigh heavily in favor of denying the Motion. As discussed below, the language in the sample non-participation clause expressly permits former employees to cooperate with governmental investigations and to respond to legal process -- precisely the sort of exception that courts invoke in finding the provisions enforceable.[7] It is far from "clear and certain" that the sample clause is illegal; in light of the exceptions, quite the opposite is the case. See Estes Express Lines, 641 S.E.2d at 478. Moreover, Plaintiffs' claim that that the provision has obstructed their investigation, e.g., Motion at 3, conflicts with their own allegations regarding that investigation, which has allegedly involved over 100 interviews, AC ¶ 35, not one of which has yielded any evidence of fraud. Neither the contractual language nor its context supports the declaration and injunction Plaintiffs seek.

### B. The Sample "Non-Participation" Clause Is Consistent With Public Policy.

      Even if Plaintiffs had alleged that the sample non-participation clause that they quote was in fact the clause in Freddie Mac's severance agreements -- and they have not -- contractual clauses similar to that sample are common, enforceable, and consistent with sound public policy. See, e.g., Cooper Tire & Rubber Co. v. Farese, 423 F.3d 446, 456-58 (5th Cir. 2005) (holding that severance agreement clause prohibiting former employee from collaborating with any third party in the taking of any action against defendant company is neither illegal nor unconscionable, serves a "valid legal purpose," and is "common in situations where two parties terminate their employment relationship by contract"); Yockey v. Horn, 880 F.2d 945, 951 (7th Cir. 1989)

---

[7] As quoted by Plaintiffs, the sample agreement permits assistance "pursuant to a valid subpoena or court order, or . . . [if] requested by an agency of the United States government or state or local government . . . to assist in a government agency investigation or proceeding." Motion at 5.

("The enforcement of Horn's promise not to voluntarily participate in litigation against Yockey does not violate any public policy of Illinois of which we are aware."); Amari Co., Inc. v. Burgess, 546 F. Supp. 2d 571, 582-83 (N.D. Ill. 2008) (plaintiffs not entitled to protective order enjoining owners from enforcing company's confidentiality agreements against former employees); Williams v. Bayer Corp., 982 F. Supp. 120, 125 (D. Conn. 1997) (noting that separation agreements "are often used to afford employees, who would otherwise be fired, severance pay and favorable personnel records in exchange for a release of claims against the employer and an agreement not to speak disparagingly against the company" and that they generally "benefit the public").

In particular, clauses of this sort are deemed to be consistent with public policy precisely because they allow the employee to participate in governmental investigations and respond to legal process. See Zanders v. National R.R. Passenger Corp., 898 F.2d 1127, 1133-34 (6th Cir. 1990) (observing that "to the extent such a contract might potentially collide with rights protected under such acts, we note that the severance contract at issue here expressly provides that the agreement would not bar her participation in proceedings when 'required by law'"); Yockey, 880 F.2d at 951 ("Most notably, the Yockey-Horn settlement agreement does not preclude participation in litigation against the other party under subpoena or other court process; it therefore is not obstructive, as Horn alleges, of the fair and just administration of justice.").[8]

Cooper Tire well illustrates the validity and benefit of separation clauses restricting participation in litigation against a former employer. In that case, a former employee was terminated for embezzlement, and she signed a separation agreement in which she covenanted not to "collaborate in any way in the taking of any action with any third party concerning

---

[8] See also Amari Co., Inc. v. Burgess, 546 F. Supp. 2d 571, 582-83 (N.D. Ill. 2008) (refusing to enjoin owners from enforcing company's confidentiality agreements against former employees who would reveal information relating to fraudulent racketeering activity alleged in complaint); Spectrum Brands, 2007 WL 1483633, at *3-5 (denying motion to limit scope of confidentiality agreements between defendant and its present and former employees, and denying motion to lift discovery stay to allow additional discovery from confidential witnesses); Saini v. Int'l Game Tech., 434 F. Supp. 2d 913, 920-22 (D. Nev. 2006) (granting preliminary injunction against former employee to prevent him from disclosing internal employer documents to party adverse to employer in other litigation, in violation of employee's confidentiality agreement).

[Cooper Tire], without first receiving the written approval of [Cooper Tire]." 423 F.3d at 450 (italics omitted; alteration in original). In the course of reviewing the draft agreement, the employee told her attorney that she had been instructed to shred documents that were potentially relevant to a federal suit pending in Arkansas. Id. The attorney promptly drafted an affidavit, which the employee executed, made largely unrelated changes to the draft termination agreement, and forwarded the incriminating affidavit, which eventually reached an attorney who represented another plaintiff in litigation against the company. Id. at 450-51. The affidavit was also leaked to a national business television news network, which ran the story, whereupon Cooper Tire's stock plunged 11% in one day. Id. at 452. It soon came to light that the former employee had not been instructed to shred documents, and when Cooper Tire became aware of her affidavit, it sued the various lawyers who disseminated the affidavit for tortious interference and civil conspiracy. Id. at 453. The district court granted summary judgment in favor of the disseminating lawyers, finding that the provision in the settlement agreement preventing collaboration with others was void on public policy grounds. Id. at 454.

On appeal, the Fifth Circuit vacated that ruling, holding that nothing in state law supported a ruling that non-disparagement or non-participation clauses[9] are illegal per se. Id. at 457. The court further held that the "mere possibility that an employer *could* use a non-disparagement clause to hide illegal activity is . . . insufficient to void the clause on grounds of public policy." Id. (emphasis in original). The court found it significant that the separation agreement could not in any event prevent the former employee from "testifying in court or at a deposition pursuant to a valid subpoena." Id. In upholding enforceability of that clause, the Fifth Circuit concluded with the observation that such clauses "are intended to prevent a disgruntled employee from disseminating sensitive or false information in revenge for being terminated. This action demonstrates the valid legal purpose these clauses serve." Id. at 457-58 (internal citation omitted).

---

[9] The Cooper Tire court referred to the clause as a non-disparagement clause even though it also contained "non-participation" terms.

12

Like the clause in <u>Cooper Tire</u>, the sample clause quoted by Plaintiffs does not forbid former employees from cooperating with a government investigation or testifying pursuant to a valid subpoena.  Further, as in <u>Cooper Tire</u>, there is no indication that Freddie Mac seeks to use a non-participation or other confidentiality term to conceal illegal activity.  Although Plaintiff makes lurid and unfounded accusations that Freddie Mac has "intentionally and knowingly attempted to prevent Plaintiffs from conducting the very investigation required to satisfy the PSLRA" (Motion at 3[10]), those accusations lack any foundation.  Indeed, Plaintiff is compelled to acknowledge that it lacks a basis for contending that Freddie Mac has engaged in witness tampering.  <u>See</u> Motion at 12 n.5.  In any event, such an argument would be a red herring, since the language of the alleged "Non-Participation" clause explicitly authorizes cooperation with the government or in response to legal process.  <u>See</u> <u>Yockey</u>, 880 F.2d at 951 ("The language of the settlement agreement does not specifically forbid either party from aiding in a criminal prosecution against the other, and this case does not involve such a scenario.  If Yockey were seeking to enforce the settlement agreement against Horn in such a context then we might have had a different result.  This argument by Horn is nothing more than a legal red herring."); <u>see also</u> <u>Spectrum Brands</u>, 2007 WL 1483633, at *5 n.9 ("Plaintiffs have not presented any evidence that Spectrum has taken any action to impede their investigation.") (denying motion to limit scope of confidentiality or severance agreements).

### C.    Plaintiffs' Cases Are Distinguishable.

The few cases that Plaintiffs cite in support of their Motion are distinguishable.

To begin, in <u>JDS Uniphase</u>, 238 F. Supp. 2d 1127, a magistrate judge was forced to consider a separation agreement that -- unlike the sample clause here -- did not contain an exception permitting former employees to comply with court process or government investigations.  <u>See</u> <u>id.</u> at 1131 (quoting separation agreement).  Precisely because the clause

---

[10] <u>See also</u> <u>id.</u> at 10 ("Freddie Mac has <u>succeeded</u>, through the use of the 'Non Participation' clause, <u>in its plan to obstruct any efforts to discover the facts underlying Defendants' fraud</u>.") (emphasis added); <u>id.</u> at 16 ("[I]n order to prevent Freddie Mac and the other Defendants here from <u>continuing to strong-arm former employees and hide their fraudulent misconduct</u> from Plaintiffs, their counsel and their investigators . . . .") (emphasis added).

operated as a categorical bar to disclosing illegal conduct, the magistrate judge held it to be unenforceable.  Id. at 1137 ("To the extent that this agreement can be read to prohibit an employee from providing any information about any wrongdoing by JDSU, it is plainly unenforceable.").

Chambers v. Capital Cities/ABC, 159 F.R.D. 441, is distinguishable for this same reason. There, the court was apparently faced with contractual provisions that categorically prevented former employees from even testifying at deposition during the discovery phase of litigation.  Id. at 445.  There, the Court declared that such contractual provisions were "preempted," to the extent such provisions interfered unreasonably "with federal judicial proceedings under federal substantive law."  Again, here, the sample clause quoted by Plaintiffs expressly allows for communications pursuant to valid legal process.

In re Flir Systems, Inc. Securities Litigation, No. 00-360-HA, 2000 WL 33201904 (D. Or. Dec. 13, 2000), arises from a unique factual circumstance.  In that case, the court granted a motion to lift, in part, the PSLRA discovery stay to allow deposition of a former employee, Palmquist, who had filed a complaint against defendants that "directly corroborates plaintiff's allegations of fraud."  Id. at *2.  No such facts are alleged here.  No witness has filed any complaints against Freddie Mac that corroborate in any way Plaintiffs' conclusory allegations of fraud.[11]  The Flir court noted that the pendency of Palmquist's complaint demonstrated that a deposition was not planned "merely as part of a fishing expedition in hope that the person subject to the discovery might be able to provide something helpful to the plaintiffs."  Id.  The court also found that the only reason Palmquist would not share information with plaintiffs was that "defendants have essentially threatened him with legal action if he does so."  Id.  Flir therefore stands in stark contrast to the facts presented by Plaintiffs' Motion.  Plaintiffs cannot point to any former employee who is allegedly aware of any fraud by any Defendant, let alone that any of

---

[11] It is questionable whether Flir is good law in any event.  The magistrate judge in JDS Uniphase observed that "[i]t is questionable whether Flir's holding that plaintiffs could depose Palmquist is consistent with SG Cowen." 238 F. Supp. 2d at 1134.  SG Cowen held that "as a matter of law, failure to muster facts sufficient to meet the [PSLRA's] pleading requirements cannot constitute 'undue prejudice' to the plaintiff justifying a lift of the discovery stay under § 78u-4(b)(3)(B)."  189 F.3d at 913.

14

these former employees had previously asserted fraud claims that corroborate Plaintiffs' claims.[12]

### D.    A Declaration That "Non-Participation" Clauses Are Unenforceable Would Contravene Public Policy.

The effect of a legitimate, bargained-for severance agreement does not offend public policy, but Plaintiffs' quest to invalidate such agreements in aid of a fishing expedition certainly does. In a case governed by the PSLRA, Plaintiffs are required to have supportive facts before filing a complaint. See, e.g., Sarantakis v. Gruttaduaria, No. 02-1609, 2002 WL 1803750, at *1 (N.D. Ill. Aug. 5, 2002) (automatic stay designed "to avoid the situation in which a plaintiff sues without possessing the requisite information to satisfy the PSLRA's heightened pleading requirements, then uses discovery to acquire that information and resuscitate a complaint that would otherwise be dismissed). As the Spectrum Brands court explained, refusing to declare such clauses unenforceable in a similarly frivolous securities strike suit:

> **The PSLRA embodies a policy judgment by Congress to provide unique restrictions to plaintiffs' access to information in securities fraud cases.** The PSLRA imposes demanding barriers on the pleading of securities fraud cases to guard against the risk of "plaintiffs [who] . . . file frivolous lawsuits in order to conduct discovery in hopes of finding a sustainable claim not alleged in the complaint." S. Rep. No. 104-98 at 14 (1995). The express purpose of the PSLRA is to require potential securities fraud plaintiffs to gather enough information prior to filing to plead the facts of an alleged fraud, including facts that give rise to a strong inference of scienter, with specificity sufficient to meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). **The PSLRA requires potential plaintiffs to meet this initial pleading requirement without access to significant discovery.** See U.S.C. § 78u-4(b)(3)(B) (imposing mandatory stay of discovery during the pendency of any motion to dismiss).

Spectrum Brands, 2007 WL 1483633, at *4 (emphasis added) (internal citation omitted).

Plaintiffs' Motion is predicated on the notion that, although they are not allowed access to formal discovery, and despite the fact that they have already filed an initial complaint and an amended complaint, public policy dictates that they be permitted to continue to interview former

---

[12] In re Tyco Int'l Ltd. Securities Litigation is inapposite, as that magistrate judge's ruling did not involve any non-participation, non-disparagement or confidentiality agreements. No. 00-MD-1335-B, 2001 WL 34075721 (D.N.H. Jan. 30, 2001).

A/73116159.9

employees of Freddie Mac, regardless of those employees' contractual commitments.  Notably, confidential witnesses in the form of former employees are a poor source of information in any event.  Many courts have held that allegations based on confidential sources of the sort Plaintiffs seek are entitled to little weight, especially in light of the requirement, established in Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308 (2007), that any inference of scienter must be at least as compelling as opposing inferences one could draw.  See Higginbotham v. Baxter Int'l, 495 F.3d 753, 757 (7th Cir. 2007) (holding, in light of Tellabs, that allegations from confidential witnesses must be discounted, and "[u]sually that discount will be steep," because "[i]t is hard to see how information from anonymous sources could be deemed 'compelling' or how we could take account of plausible opposing inferences.  Perhaps these confidential sources have axes to grind.  Perhaps they are lying.  Perhaps they don't even exist."); Ley v. Visteon Corp., 543 F.3d 801, 811 (6th Cir. 2008) (same).

In fact, Plaintiffs' effort to continue to interview former employees is a tacit admission that they have yet to discover any supposed fraud.  Indeed, Plaintiffs essentially admit throughout the Motion that the reason they need interviews with additional former employees is that their Amended Complaint lacks sufficient facts to survive a motion to dismiss.  See Motion at 2, 3, 10.  Plaintiffs omit from their Motion the point that the Amended Complaint is purportedly based on interviews with over 100 former employees and others, many of whom they describe for confidential attribution.  AC ¶¶ 35-62.  The extent of the investigation conducted so far belies Plaintiffs' halfhearted claims that they are being placed at any disadvantage, given the mandatory discovery stay that the PSLRA itself imposes.  See Amari, 546 F. Supp. 2d at 583 ("This abundance of witnesses undermines any claim that IPA's confidentiality agreements are preventing Plaintiffs from obtaining information.").

In sum, public policy considerations militate against this Court's declaring that Plaintiffs' sample clause -- or any actual contractual clause -- is void as against public policy.  That is particularly so where, as here, the sample severance clause expressly permits communication pursuant to a subpoena or in aid of a government investigation.  That means that former

16

employees are free to assist in nearly any type of litigation. While Plaintiffs see in this some nefarious plot by Freddie Mac to disenfranchise securities plaintiffs, their real grievance is with the PSLRA's discovery stay, which serves important public purposes, according to Congress.

On the other hand, the severance clause provides Freddie Mac with recourse in contract should an unscrupulous or disgruntled employee wish to share false or sensitive information about the company. See Cooper Tire, 423 F.3d at 457 ("[Non-disparagement clauses] are intended to prevent a disgruntled former employee from disseminating sensitive or false information in revenge for being terminated."). Where any illegal acts by a company need to be shared, a contractual provision of the sort identified here allows that communication to be disclosed either to a government investigator sufficiently neutral and authorized by law to conduct a fair-minded inquiry, or in response to a valid subpoena, where Freddie Mac's interests are fairly protected by the likelihood that the communication will be recorded. Thus, the denial of Plaintiff's Motion best serves public policy and the objectives of the PSLRA.

17

## <u>CONCLUSION</u>

For all of the foregoing reasons, Lead Plaintiff's motion to declare unenforceable the contract provision it cites should be denied.

| OF COUNSEL: | BINGHAM McCUTCHEN LLP |
|---|---|
| Hyacinth Kucik<br>Lance J. Wolf<br>Howard Lindenberg<br>Freddie Mac<br>8200 Jones Branch Drive<br>McLean, Virginia  22102<br>Tel:  (703) 903-2000<br>Fax:  (703) 903-2485<br><br>Attorney for Defendants Federal Home Loan Mortgage Corporation | /s/ Jordan D. Hershman<br>Kenneth I. Schacter<br>399 Park Avenue<br>New York, New York  10022-4689<br>Tel:  (212) 705-7487<br>kenneth.schacter@bingham.com<br><br>Jordan D. Hershman<br>Jason D. Frank (admitted *pro hac vice)*<br>One Federal Street<br>Boston, MA  02110-1726<br>Tel:  (617)951-8455<br>Fax:  (617) 951-8736<br>jordan.hershman@bingham.com<br>jason.frank@bingham.com<br><br>Attorneys for Defendant Federal Home Loan Mortgage Corporation |
| Dated:  August 21, 2009 | |

A/73116159.9