UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____ x

JINO KURIAKOSE, Individually and On
Behalf of All Others Similarly Situated,

                Plaintiff,

    vs.

FEDERAL HOME LOAN MORTGAGE
COMPANY, RICHARD SYRON, PATRICIA
L. COOK, and ANTHONY S. PISZEL,

              Defendants.

_____ x

: Civil Action No. 1:08-cv-7281 (JFK)
:
: PLAINTIFFS' OMNIBUS REPLY IN
: SUPPORT OF THEIR MOTION TO
: DECLARE UNENFORCEABLE THE "NON
: PARTICIPATION" CLAUSE IN FREDDIE
: MAC'S EMPLOYEE SEVERANCE
: AGREEMENTS
:
:
:
:
:
:

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................1

II.   SUMMARY OF THE UNREBUTTED, SWORN FACTUAL BASIS FOR THIS
      MOTION..................................................................................................................6

III.  ARGUMENT .............................................................................................................6

      A.    Plaintiffs Have Standing to Ask this Court to Declare the "Non
            Participation" Clause Unenforceable in the Context of this Litigation ..................6

            1.    Plaintiffs' Rights and Duties to Represent the Class in the
                  Prosecution of this Litigation Are Harmed By the "Non
                  Participation" Clause ....................................................................6

            2.    Freddie Mac Fails to Provide Any Sworn Testimony that Rebuts
                  the Overwhelming Evidence that its Former Employees Have
                  Refused to Speak About Defendants' Securities Fraud Because of
                  the "Non Participation" Clause ....................................................9

            3.    The Fact that the "Non Participation" Clause Has Worked As
                  Intended Does Not Mean that Plaintiffs' Claims Are Meritless ...............11

      B.    Virginia Law Does not Prevent this Court from Granting the Motion .................11

      C.    The FHFA's Mandate Under HERA to Conserve Freddie Mac's Assets
            Does Nothing to Render An Unenforceable Contractual Provision
            Enforceable ....................................................................................13

IV.   CONCLUSION.........................................................................................................16

## TABLE OF AUTHORITIES

**CASES**                                                                                                      **PAGE**

*Chambers v. Capital Cities/ABC*,
 159 F.R.D. 441 (S.D.N.Y. 1995) .......................................................................3, 7, 8, 12

*Esther Sadowsky Testamentary Trust v. Syron*,
 No. 08 Cv. 5221(BSJ), 2009 WL 1309776 (S.D.N.Y. May 6, 2009)...........................5, 15

*Freeman v. FDIC*,
 56 F.3d 1394 (D.C. Cir. 1995) ........................................................................................14

*IBM v. Edelstein*,
 526 F.2d 37 (2d Cir. 1975).......................................................................................2, 7, 8, 12

*In re Fed. Home Loan Mortgage Corp. Derivative Litig.*,
 No. 08CV773, 2009 WL 2421447 (E.D. Va. July 27, 2009)........................................5, 15

*In re Fed. Nat'l Mortgage Ass'n Sec., Derivative, ERISA Litig.*,
 629 F. Supp. 2d 1 (D.D.C. June 25, 2009)...................................................................5, 15

*In re Flir Sys., Inc. Sec. Litig.*,
 No. Civ. 00-360-HA, 2000 WL 33201904 (D. Or. Dec. 13, 2000) .................................2, 8

*In re JDS Uniphase Corp. Sec. Litig.*,
 238 F. Supp. 2d 1127 (N.D. Cal. 2002) .........................................................................2, 8

*In re Spectrum Brands, Inc. Sec. Litig.*,
 No. 1:05-cv-02494-WSD, 2007 WL 1483633 (N.D. Ga. May 18, 2007) ........................10

*In re Tyco Int'l. Ltd. Sec. Litig.*,
 No. 00-MD-1335-B, 2001 WL 34075721 (D.N.H. Jan. 30, 2001)......................2, 7, 8, 12

*Markowitz Jewelry Co., Inc. v. Chapal/Zenray, Inc.*,
 988 F. Supp. 404 (S.D.N.Y. 1997) ...............................................................................10

*St. George Maronite Catholic Church v. Green*,
 Civ.A. No. SA-94-CA-334, 1994 WL 763743 (W.D. Tex. July 25, 1994)......................13

*Ward v. Resolution Trust Corp.*,
 996 F.2d 99 (5th Cir. 1993) ..........................................................................................14

*Whalen v. Chase Manhattan Bank*,
 14 Fed. Appx. 120 (2d Cir. 2001) .................................................................................15

**STATUTES, RULES AND REGULATIONS**

12 U.S.C. §4617.................................................................................................5

12 U.S.C. §4617(a)(3)(E)................................................................................5, 15

12 U.S.C. §4617(b)(2)(B)(i) ...........................................................................5, 15

12 U.S.C. §4617(b)(2)(J)(ii) ...........................................................................5, 15

Housing and Economic Recovery Act of 2008 ("HERA") .....................4, 5, 13, 14, 15

Lead Plaintiff, Central States, Southeast and Southwest Areas Pension Fund and plaintiff National Elevator Industry Pension Plan (collectively, "Plaintiffs"), respectfully submit the following omnibus reply in support of their motion ("Motion") for this Court to enter an Order declaring unenforceable the "Non Participation" clause contained within the severance agreements between defendant Federal Home Loan Mortgage Corporation (hereinafter "Freddie Mac" or the "Company") and its former employees.  Freddie Mac and the Federal Housing Finance Agency ("FHFA") filed separate responses in opposition to the Motion.[1]  In support thereof, Plaintiffs state:

## I.   INTRODUCTION

What Freddie Mac's response to Plaintiffs' Motion lacks in merit, it makes up for in blind audacity.  And that is the only way to describe Freddie Mac's transparent attempt to bury and conceal intimate details of the securities fraud that its former employees want to freely speak to Plaintiffs' investigators about *but for* the so-called "Non Participation" clause in their severance agreements.

To be sure, Plaintiffs' Motion is exceedingly straightforward.  Plaintiffs not only provided sworn testimony regarding twenty-two former Freddie Mac employees who find themselves muted by the "Non Participation" clause, but also provided controlling authorities illustrating the basic legal principle Freddie Mac is attempting to dodge – that companies accused of committing securities fraud cannot prevent plaintiffs from communicating with former company employees about non-privileged and non-confidential information relating to that misconduct.  Indeed, the gravity of the fraud committed in this case cannot be overstated: the Defendants defrauded Freddie

---

[1]     For ease of reference, Freddie Mac's response will be referred to as "FM Resp." or "FM Resp. at __" and FHFA's response will be referred to as "FHFA Resp." or "FHFA Resp. at __".

Mac's equity shareholders out of billions of dollars by making false and misleading statements regarding Freddie Mac's risk and credit exposure to the non-prime and non-traditional mortgage markets, its financial reporting, as well as its capital sufficiency, thereby artificially inflating the price of its equity securities.

Rather than confront the straightforward application of the basic legal principle set forth in Plaintiffs' Motion, Freddie Mac's tactic is to – and there are no other words for it – run and hide. For example, Freddie Mac posits that it is not the "Non Participation" clause hindering Plaintiffs' fact gathering, but that Plaintiffs' claims are not meritorious. Nothing could be farther from the truth. This disingenuous argument ignores the fact that Freddie Mac's former employees have knowledge of facts in support of Plaintiffs' claims, want to talk about those facts, but cannot (indeed, are afraid to) unless the Court voids the "Non Participation" clause. Defendants' fraud is clear and Plaintiffs seek the intimate, hidden details of the fraud *vis-à-vis* former Freddie Mac employees who are otherwise willing to speak with Plaintiffs' investigators. Defendants, on the other hand, seek to obfuscate the truth by hiding behind the "Non Participation" clause.

Freddie Mac's other contentions fare no better. Freddie Mac first attempts to attack Plaintiffs' standing to bring the Motion – that somehow Plaintiffs have no cognizable right to speak to former Company employees about non-confidential and non-privileged information relating to the fraud Defendants committed here. Freddie Mac's position ignores both Second Circuit precedent as well as the plain import of various PSLRA cases included in Plaintiffs' Motion. Motion at 11-12, citing *IBM v. Edelstein*, 526 F.2d 37, 41 (2d Cir. 1975), *In re JDS Uniphase Corp. Sec. Litig.*, 238 F. Supp. 2d 1127, 1137-38 (N.D. Cal. 2002), *In re Tyco Int'l. Ltd. Sec. Litig.*, No. 00-MD-1335-B, 2001 WL 34075721, at *1-*4 (D.N.H. Jan. 30, 2001), and *In re Flir Sys., Inc. Sec. Litig.*, No. Civ. 00-360-HA, 2000 WL 33201904, at *3 (D. Or. Dec. 13, 2000)]. Indeed, Plaintiffs' request for relief

in the Motion models exactly what was described by the Honorable Vincent L. Broderick in *Chambers v. Capital Cities/ABC*, 159 F.R.D. 441, 444-46 (S.D.N.Y. 1995) ("Defendant's assurance to the former employees will authorize the employees to talk with plaintiff's counsel directly without fear of adverse consequences, while indicating that they are not required to do so.").[2] Freddie Mac does little more than pretend these controlling authorities have no meaning.

Freddie Mac then goes on to contend that Virginia law would somehow prohibit this Court from granting the Motion because Virginia courts are "averse to holding contracts unenforceable on the grounds of public policy." FM Resp. at 8-10. Freddie Mac's contention, however, misunderstands the Motion. The Motion does not ask this Court to declare the entire severance agreements unenforceable. Rather, the Motion seeks invalidation of the illegal "Non Participation" clause, which is a fractional part of the severance agreements. The remainder of the severance agreements is immaterial to and unaffected by the Motion.

Moreover, Freddie Mac's contention that Virginia law somehow prohibits this Court from granting the Motion would completely undo Congress' power to uniformly regulate the prosecution of securities fraud in the United States. Under Freddie Mac's view, companies should be permitted to actively and contractually conceal their securities fraud by employing "keep your mouth shut" provisions in employee severance agreements and by hiding behind state law to effectively preempt Federal law. Taken to its extreme, this position could eviscerate securities fraud claims by making it impossible for Plaintiffs to gather the facts necessary to satisfy the pleading requirements of the PSLRA. That is simply wrong. Nor does Freddie Mac cite any case for that unfounded contention.

---

[2]    Emphasis is added and citations and quotations are omitted unless otherwise noted.

Freddie Mac also hides behind an unsworn, paper-thin interpretation of the "Non Participation" clause made by its lawyers in the brief. Despite the sworn testimony provided by Plaintiffs in support of the Motion about the former Company employees who would be otherwise willing to speak with Plaintiffs' investigators but for the "Non Participation" clause – an agreement that the former Company employees themselves brought to the attention of Plaintiffs' investigators – Freddie Mac's lawyers contend in the response that the clause "explicitly authorizes cooperation with the government or in response to legal process." FM Resp. at 13.[3] Indeed, Freddie Mac's lawyers imply that the "Non Participation" clause might not even exist at all. FM Resp. at 1, 5-6. If the "Non Participation" clause is a figment of the imaginations of both Plaintiffs' counsel and the twenty-two witnesses who wanted to but couldn't speak, why hasn't any Defendant sworn, under oath, that the clause does not exist? In the face of Plaintiffs' overwhelming testimony to the contrary, Freddie Mac's pusillanimous attempt to describe the nature and existence of the "Non Participation" clause through its lawyers should be seen for what it is . . . smoke and mirrors.

The FHFA's opposition to the Motion is as flawed as Freddie Mac's and it relies on the same fundamental misunderstanding of the relief Plaintiffs seek in the Motion. The crux of the FHFA's position is that the Housing and Economic Recovery Act of 2008 ("HERA"), which enumerates the powers and duties of the FHFA as Freddie Mac's conservator, somehow prohibits the Court from invalidating the "Non Participation" clause because it would upset the FHFA's mandate to "preserve

---

[3]    If Freddie Mac is taking the position that the "Non Participation" clause should be upheld because the "legal process" language contained therein permits former employees to provide information as a part of the discovery process, they raise disingenuousness to new heights. As Freddie Mac is well aware, the PSLRA discovery stay bars discovery until after the resolution of a motion to dismiss. So, Freddie Mac would prohibit Plaintiffs from interviewing former employees until after denial of its motion to dismiss, while at the same time arguing that Plaintiffs' complaint should be dismissed because the information that would be provided by gagged former employees has not been pled.

and conserve" Freddie Mac's assets. The FHFA evidently misunderstands the Motion as somehow seeking to declare every severance agreement, in its entirety, unenforceable. Of course, that is not the case as Plaintiffs are only asking this Court to invalidate the "Non Participation" clause, for the limited purpose set forth in the Motion, not any other part of the severance agreements.

Indeed, as conservator, the FHFA essentially steps into Freddie Mac's shoes. *See generally*, 12 U.S.C. §4617. There is nothing in HERA permitting the FHFA to magically transform Freddie Mac's assets from one thing to another – or to turn an unenforceable clause into an enforceable one. If the Court determines the "Non Participation" clause is unenforceable, HERA does not prohibit the Court from so declaring.

For that reason, how could concealment of Defendants' securities fraud *vis-à-vis* Freddie Mac's former employees possibly be inconsistent with the FHFA's mandate under HERA? Such a staggering notion is simply untrue. Under HERA, not only is concealment of company records sufficient to trigger discretionary appointment of a conservator, FHFA is granted "all the powers of the shareholders" of Freddie Mac and tasked with taking "any action" that is in "the best interests" of Freddie Mac. 12 U.S.C. §§4617(a)(3)(E), (b)(2)(B)(i), (b)(2)(J)(ii). It is in Freddie Mac and its shareholders' best interests to ferret out and expose additional facts about Defendants' fraud through invalidation of the unenforceable non-participation clause. Indeed, the FHFA should be judicially estopped from arguing anything to the contrary as the FHFA itself set forth this very concept of pursuing the best interests of Freddie Mac in successfully moving to prosecute Freddie Mac derivative shareholder claims in *In re Fed. Home Loan Mortgage Corp. Derivative Litig.*, No. 08CV773, 2009 WL 2421447, at *1 (E.D. Va. July 27, 2009); *In re Fed. Nat'l Mortgage Ass'n Sec., Derivative, ERISA Litig.*, 629 F. Supp. 2d 1 (D.D.C. June 25, 2009); and *Esther Sadowsky*

*Testamentary Trust v. Syron*, No. 08 Cv. 5221(BSJ), 2009 WL 1309776, at *1 (S.D.N.Y. May 6, 2009).

For the reasons more fully stated herein, Plaintiffs ask this Court to grant the Motion.

## II.    SUMMARY OF THE UNREBUTTED, SWORN FACTUAL BASIS FOR THIS MOTION

Without restating the entirety of what Plaintiffs have already provided in the Motion, there can be no dispute about the facts. Lead Counsel for Plaintiffs employed four investigators to conduct interviews with former Freddie Mac employees. Motion at 6-9. During the course of those interviews, twenty-two former Freddie Mac employees refused to speak with the investigators due to a "Non Participation" clause in their severance agreements with Freddie Mac. *Id.* Plaintiffs attached to the Motion the sworn declarations from the four investigators which detail the contacts and attempted interviews with the twenty-two different former Freddie Mac employees, as well as the particular information regarding Freddie Mac's fraud of which the former employees are believed to have knowledge. *Id.* As of now, the "Non Participation" clause is succeeding in hiding details regarding Defendants' securities' fraud in a manner so prolific that is has never before been witnessed by one of Plaintiffs' seasoned investigators. *Id.*

## III.    ARGUMENT

### A.    Plaintiffs Have Standing to Ask this Court to Declare the "Non Participation" Clause Unenforceable in the Context of this Litigation

#### 1.    Plaintiffs' Rights and Duties to Represent the Class in the Prosecution of this Litigation Are Harmed By the "Non Participation" Clause

Freddie Mac contends that Plaintiffs do not have standing to bring the Motion because:

Plaintiffs cannot point to any actual (as opposed to speculative) injury they will suffer sufficient to confer standing.

FM Resp. at 8.

However, the injury is apparent in the fact that twenty-two willing witnesses have refused to speak the truth as a result of Freddie Mac's unilaterally imposed gag order.

It should go without saying that Plaintiffs have the fiduciary obligation to attempt to uncover all of the details of Defendants' fraud. Moreover, the PLSRA inherently obliges Plaintiffs and their counsel to undertake such efforts in the quest to satisfy the PSLRA's heightened pleading requirements. FM Resp. at 10-15. The Motion specifically explains how the "Non Participation" clause has been an unprecedented impediment to Plaintiffs' ongoing investigation with nearly two dozen former Freddie Mac employees willing but unable to speak with Plaintiffs' investigators. Thus, injury to Plaintiffs and the class could not be clearer.

Indeed, that is precisely why the Second Circuit's seminal mandate in *IBM*, 526 F.2d at 41, that "counsel for all parties have a right to interview an adverse party's witnesses (the witness willing) in private" has been the standard that is likewise applied to PSLRA cases. For example, as Plaintiffs stated in the Motion, the court in *Tyco*, 2001 WL 34075721, at *1-*4, denied the company's protective order to prohibit the plaintiffs from interviewing former employees, stating:

> Defense counsel previously convinced the Second Circuit Court of Appeals that restrictions on witness interviews by counsel could "impair the constitutional right to effective assistance of counsel" and that this activity is part of "time-honored and decision-honored principles, namely, that counsel for all parties have a right to interview an adverse party's witnesses (the witness willing) in private, without the presence or consent of opposing counsel . . ." *IBM*, 526 F.2d at 42. The court in *IBM* got it right. The right to conduct such investigations is protected and is not impaired by the PSLRA.

Mot. at 12.

Again, Plaintiffs are asking for exactly the same procedure that was described by Judge Broderick in the *Chambers* case:

> [Agreements] obtained by employers requiring former employees to remain silent about underlying events leading up to disputes, or concerning potentially illegal practices when approached by others can be harmful to the public's ability to rein in

7

improper behavior, and in some contexts ability of the United States to police violations of its laws.

\* \* \*

Here, plaintiff would plainly be adversely affected by his inability to secure through depositions *or pre-deposition interviews* in connection with the present litigation, information relevant to his claim, whereas former employees paid for an agreement to keep silent might have little interest in challenging the agreement.

\* \* \*

Defendant's assurance to the former employees will authorize the employees to talk with plaintiff's counsel directly without fear of adverse consequences, while indicating that they are not required to do so.

*Chambers*, 159 F.R.D. at 444-46.

In response, Freddie Mac essentially pretends the *IBM* decision does not exist and attempts to neuter cases like *Tyco* and *Chambers* with the remarkable contention that they do not confer standing on Plaintiffs to bring the Motion because the cases "failed to address standing at all." FM Resp. at 5 n.4. Freddie Mac's position is belied by the facts and the law, both of which demonstrate that Plaintiffs have standing to bring the Motion precisely because the concealment of information *vis-à-vis* the former employees violated the parties' rights. *IBM*, 526 F.2d at 41 ("counsel for all parties have a right to interview an adverse party's witnesses (the witness willing) in private"); *Chambers*, 159 F.R.D. at 444-46 ("plaintiff would plainly be adversely affected by his inability to secure through depositions or pre-deposition interviews in connection with the present litigation"); *Tyco*, 2001 WL 34075721, at \*3 ("The right to conduct such investigations is protected and is not impaired by the PSLRA."); *JDS Uniphase*, 238 F. Supp. 2d at 1137-38 ("[The company] cannot use its confidentiality agreements to chill former employees from voluntarily participating in legitimate investigations into alleged wrongdoing by [the company.]"); *Flir Sys.*, 2000 WL 33201904, at \*3 ("The PSLRA is a shield intended to protect security-fraud defendants from costly discovery

requirements, not to be a sword with which defendants can destroy the plaintiffs' ability to obtain information from third parties who are otherwise willing to disclose it.").

> ### 2. Freddie Mac Fails to Provide Any Sworn Testimony that Rebuts the Overwhelming Evidence that its Former Employees Have Refused to Speak About Defendants' Securities Fraud Because of the "Non Participation" Clause

Freddie Mac contends that the Motion impermissibly seeks an advisory opinion, stating:

> Plaintiffs fail to cite any specific provision from any particular severance agreement between Freddie Mac and any identifiable former employee. Rather, Plaintiffs state only that "on information and belief" the clauses in Freddie Mac severance agreements "contain substantially" the language in their sample. Courts refuse to issue opinions regarding hypothetical contractual language . . . . [T]hese unidentified former employees are only *hypothetically* constrained: The severance clause language may be entirely superfluous when paired, for example, with an independent lack of interest to speak with Plaintiffs.

FM Resp. at 5-6. In other words, Freddie Mac is taking the inconsistent positions that the "Non Participation" clause might not even exist and that, even if it did, the clause is not actually preventing the communication Plaintiffs seek to have with the former employees.

However, the reasons for the use of the words "on information and belief" were necessary because no potential witnesses would provide a copy of his or her severance agreement, but one was willing to read the provision to Plaintiffs' investigators. The very act of a former employee providing Lead Plaintiffs' counsel with a copy of her/his severance agreement containing the "Non Participation" clause would have arguably violated the "Non Participation" clause. Freddie Mac cannot have it both ways. The witness who read Freddie's "Non Participation" clause was not named. Likewise, the witness was not named because he or she wanted to remain a confidential witness for fear of reprisal by Freddie Mac.

Indeed, although Freddie Mac has the audacity to imply that there is no such thing as a "Non Participation" clause in its former employees severance agreements, Freddie Mac has declined, for whatever reason, to back that position up under oath. The unsworn assertions from Freddie Mac's

9

lawyers carry no weight whatsoever, especially given the overwhelming sworn testimony to the contrary. *See*, *e.g.*, *Markowitz Jewelry Co., Inc. v. Chapal/Zenray, Inc.*, 988 F. Supp. 404, 407 (S.D.N.Y. 1997) ("[T]estimonial evidence submitted on motions must be in the form of affidavits or declarations. Unsworn statements by counsel simply will not do.").

Further, Freddie Mac's unsubstantiated position as to the meaning of the "Non Participation" clause should be rejected by the Court, especially in light of the sworn testimony Plaintiffs have provided, which is unrebutted and establishes the chilling effect of the clause on potential (willing) confidential witnesses.

Indeed, this is precisely why the case Freddie Mac cites, *In re Spectrum Brands, Inc. Sec. Litig.*, No. 1:05-cv-02494-WSD, 2007 WL 1483633, at *1 (N.D. Ga. May 18, 2007), has no bearing here. Apart from the distinguishing fact that the *Spectrum Brands* Court found that the plaintiffs should not have waited until their amended consolidated complaint was ***dismissed*** to seek a ruling on the confidentiality agreements, a significant other distinguishing factor is the fact that the plaintiffs in *Spectrum Brands* did not put forth any ***evidence*** that the defendant company's confidentiality agreement impeded the plaintiffs' investigation into the company's fraud. *Id*. at *5 n.9. Just the opposite is true here. As mentioned above and demonstrated in the Motion, Plaintiffs' investigators have, under oath, provided detailed, sworn testimony as to how twenty-two former Freddie Mac employees who likely possess specific factual details of Defendants' fraud have been willing to speak yet declined to be interviewed because of the "Non Participation" clause. Thus, Freddie Mac cannot credibly maintain that Plaintiffs have no evidence to support their need for relief in the Motion. ***Indeed, it is Freddie Mac that has come forward with no evidence to support its position!***

### 3.    The Fact that the "Non Participation" Clause Has Worked As Intended Does Not Mean that Plaintiffs' Claims Are Meritless

Freddie Mac further adds that this Court should deny the Motion under principles of standing because Plaintiffs' request for this Court to declare the "Non Participation" clause unenforceable somehow means that Plaintiffs' operative complaint lacks merit.  Freddie Mac states:

> Plaintiffs allege in their Amended Complaint that they have already conducted more than 100 interviews . . . .  Yet Plaintiffs now maintain in the Motion that they are being "prevent[ed] . . . from conducting the very investigation required to satisfy the PSLRA."  The two assertions do not jibe.  On the one hand, Plaintiffs seek to support the Amended Complaint with a statement touting the extent of the information that they have gathered in their investigation.  On the other hand, they claim that they are hamstrung by allegedly pernicious contractual clauses.  Although it is true that Plaintiffs have yet to find any evidence of any fraud, that is not because their investigation has been obstructed.  One hundred interviews is plainly a broad investigation.  That investigation's failure to yield a colorable claim speaks only to the baselessness of Plaintiffs' knee-jerk fraud allegations, not to any alleged obstruction.

FM Resp. at 7-8.

Freddie Mac's sanctimonious bluster misses the point.  Plaintiffs did not abandon their still ongoing investigation because of Defendants' obstructionist drafting of the severance agreements.  Instead, Plaintiffs relentlessly pursued other confidential witnesses who were not figuratively handcuffed and gagged by Freddie Mac.  The confidential witnesses interviewed and quoted in the Amended Complaint tell a compelling story of Defendants' fraud and amply demonstrate the merits of Plaintiffs' claims.  Plaintiffs' diligence does not, however, negate the fact that Freddie Mac has (illegally) muted many of its former high level employees.  Indeed, Plaintiffs' claims will only grow stronger when the Court frees the other willing witnesses from their restraints.

### B.    Virginia Law Does not Prevent this Court from Granting the Motion

Freddie Mac contends that Virginia law would somehow prohibit the Motion.  Freddie Mac states:

Plaintiffs effectively ask this Court to make new law in Virginia that is inconsistent with that Commonwealth's presumption against holding a negotiated agreement unenforceable on public policy grounds. Moreover, Plaintiffs have also not identified any Virginia public policy that the alleged Freddie Mac "Non Participation" clause allegedly violates . . . . [T]he language in the sample non-participation clause expressly permits former employees to cooperate with governmental investigations and to respond to legal process — precisely the sort of exception that courts invoke in finding the provisions enforceable . . . . Neither the contractual language nor its context supports the declaration and injunction Plaintiffs seek.

FM Resp. at 8-10.

Freddie Mac is mistaken. First, and as stated above, the unsworn assertions from Freddie Mac's lawyers about what the "Non Participation" clause means carry no weight, especially in contrast to the sworn testimony Plaintiffs have provided which demonstrates that the "Non Participation" clause is a muzzle for Freddie Mac's former employees that prevents them from speaking about Freddie Mac's fraud.

Likewise, Freddie Mac overstates the import of the Motion, as the Motion solely seeks to declare a fraction of the severance agreement unenforceable – only the "Non Participation" clause. In fact, Freddie Mac cites no case for the proposition that Virginia law would somehow uniquely allow companies that are accused of committing securities fraud to prevent plaintiffs from communicating with former company employees about non-privileged and non-confidential information relating to that misconduct, whereas such conduct would not be tolerated under the laws of other states. Nor does that make any sense. None of the authorities on this issue, like *IBM*, *Chambers*, and *Tyco*, among the other cases cited in the Motion, contain the *proviso* that somehow a state's law may allow a company to conceal its fraud *vis-à-vis* severance agreements with former employees. Indeed, such a rule would undermine the integrity of Congress' authority to regulate securities fraud in the United States, since the success of any given PSLRA plaintiff's prosecution would be proportionate to the degree to which the applicable state law permits the defendant

company to bury and conceal securities fraud with former company employees *vis-à-vis* non-disclosure agreements.  That is absurd.

### C.  The FHFA's Mandate Under HERA to Conserve Freddie Mac's Assets Does Nothing to Render An Unenforceable Contractual Provision Enforceable

The FHFA also asks this Court to deny the Motion arguing that the Court's invalidation of the "Non Participation" clause would undermine its congressional mandate under HERA as conservator of Freddie Mac:

> By maintaining and enforcing Freddie Mac's severance agreements, the Conservator is acting squarely within its statutory powers and functions.  As such, this Court lacks jurisdiction under Section 4617(f) to declare these agreements unenforceable, as such a declaration would necessarily "restrain or affect" the Conservator's powers and functions . . . .  Indeed, to allow such a far-reaching challenge to proceed against the Conservator would expose it to overly intrusive and potentially limitless suits by non-parties attempting to interfere with the contractual relations of the Conservator. Such an imposition would no doubt "restrain or affect" the Conservator in the pursuit of its statutory powers and functions, and is plainly barred by HERA."

FHFA Resp. at 8-10.

Yet the FHFA misunderstands the Motion.  The Motion only seeks invalidation of the "Non Participation" provision of the severance agreements, not the entirety of the agreements.  Indeed, the FHFA merely steps into the shoes of Freddie Mac and must take its assets as they are.  Asking the Court to determine whether the "Non Participation" clause is unenforceable does nothing to impair the FHFA's ability to enforce those sections of the severance agreements that are not illegal.  To suggest that HERA strips the Court of its power to interpret contracts is audacious and without any factual or legal support.  The Motion simply seeks the ability to conduct voluntary interviews with former Freddie Mac employees about non-confidential and non-privileged information relating to Defendants' securities fraud.  Thus, the FHFA's concern that the Motion is somehow "far–reaching" is without merit, and the cases the FHFA cites in support thereof have no bearing here.

For instance, the FHFA relies upon three inapt cases where the respective plaintiffs were not permitted to seek relief from defendant conservators in property disputes. In *St. George Maronite Catholic Church v. Green*, Civ.A. No. SA-94-CA-334, 1994 WL 763743, at *6-*7 (W.D. Tex. July 25, 1994), the plaintiff unsuccessfully sought to force the defendant conservator to convey land under a theory of specific performance of a contract. In *Freeman v. FDIC*, 56 F.3d 1394, 1399 (D.C. Cir. 1995), the plaintiffs were not allowed to prevent the FDIC, which was acting as receiver for a bank, from foreclosing on their home. And in *Ward v. Resolution Trust Corp.*, 996 F.2d 99 (5th Cir. 1993), the plaintiff could not block the defendant conservator's sale of a building. In this case, Plaintiffs are not seeking to cause either Freddie Mac or the FHFA to disgorge a physical asset or even abandon a legal contractual provision. Further, the FHFA is not a defendant in this case, and Plaintiffs are not asking this Court to force the FHFA to do anything at all. The FHFA cites no case for the proposition that invalidation of the (illegal) fractional portion of the severance agreements that is the "Non Participation" clause would remotely affect the FHFA as conservator of Freddie Mac or disturb a so-called "asset" of Freddie Mac.

Nor does the FHFA adequately explain how revelation of Defendants' securities fraud *vis-à-vis* Freddie Mac's former employees would "restrain or affect" the FHFA in its duties under HERA. In fact, if the FHFA would truly be so restrained or affected in carrying out its mandate under HERA, then where is a sworn declaration or affidavit from the FHFA testifying, under oath, to these details? There is no sworn statement. There are only the nonspecific, unsworn generalities of the FHFA's lawyers that should be given no weight.

To be sure, it is beyond the pale to contend that when Congress enacted HERA it intended for companies like Freddie Mac to be given blanket immunity from securities fraud claims. In fact, if anything, HERA would appear to require the FHFA to join with Plaintiffs in seeking to uncover

the details of Freddie Mac's securities fraud *vis-à-vis* Freddie Mac's former employees.    For instance, "concealment" of an agency' records is sufficient to trigger "discretionary appointment of conservator" under HERA.  12 U.S.C. §4617(a)(3)(E).  Moreover, HERA grants the FHFA not only "all powers of the shareholders" of Freddie Mac, *id.* §4617(b)(2)(B)(i), but also the power to take "any action" that is "in the best interests" of Freddie Mac or the FHFA.  *Id.* §4617(b)(2)(J)(ii).

For instance, the Honorable Barbara S. Jones granted the FHFA's motion to prosecute derivative shareholder claims in *Syron*, 2009 WL 1309776, at *2-*4, noting that the FHFA has a "right to bring an action on Freddie Mac's behalf" as well as "HERA's clear granting of shareholders' rights and powers to the FHFA."  That was also the analysis of the Honorable Richard J. Leon in granting nearly the same motion by the FHFA in the shareholder derivative case before him, agreeing with Judge Jones and further noting HERA's "broad grant of authority to the FHFA." *Fed. Nat'l Mortgage Ass'n*, 2009 WL 1837757, at *2.  The Honorable Leonie M. Brinkema also used HERA as a basis for allowing the FHFA to prosecute the Freddie Mac shareholder derivative case pending before her.  *Fed. Home Loan Mortgage Corp.*, 2009 WL 2421447, at *3-*6.  Thus, the FHFA has successfully argued the concept that the FHFA should act in the best interests of Freddie Mac's shareholders before three other courts and, for that reason, the contrary position the FHFA takes in opposition to the Motion should be rejected.  *See*, *e.g.*, *Whalen v. Chase Manhattan Bank*, 14 Fed. Appx. 120, 121-22 (2d Cir. 2001) ("Judicial estoppel is designed to prevent a party who plays fast and loose with the courts from gaining unfair advantage through the deliberate adoption of inconsistent positions in successive suits.").

## IV.    CONCLUSION

WHEREFORE, based on the foregoing, undersigned counsel respectfully requests this Court grant the Motion, declare the "Non Participation" clause unenforceable and require Freddie Mac to notify its former employees accordingly, and to grant such further relief as it deems just and proper.

DATED:  September 21, 2009

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
PAUL J. GELLER
DAVID J. GEORGE
ROBERT J. ROBBINS
JAMES L. DAVIDSON

                    */s/ David J. George*
                    DAVID J. GEORGE
120 E. Palmetto Park Road, Suite 500
Boca Raton, FL  33432-4809
Telephone:  561/750-3000
561/750-3364 (fax)
pgeller@csgrr.com
dgeorge@csgrr.com
rrobbins@csgrr.com
jdavidson@csgrr.com

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@csgrr.com

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
ERIK D. PETERSON
DARRYL J. ALVARADO
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
epeterson@csgrr.com
dalvarado@csgrr.com

***Lead Counsel for Plaintiffs***

O'DONOGHUE & O'DONOGHUE LLP
LOUIS P. MALONE III
4748 Wisconsin Avenue, N.W.
Washington, D.C.  20016
Telephone:  202/362-0041
202/362-2640 (fax)
lmalone@odonoghuelaw.com

***Co-Counsel for National Elevator Industry
Pension Plan and the Class***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 21, 2009, a true and correct copy of the foregoing

was sent via Facsimile and FedEx to the following:

Kent A. Yalowitz, Esq.
ARNOLD & PORTER LLP
399 Park Avenue
New York, NY  10022-4690
Tel: (212) 715-1000
Fax: (212) 715-1399

**Attorneys for Federal Housing Finance Agency**

Russell Lawrence Lippman, Esq.
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY  10036-8704
Tel: (212) 596-9000
Fax: (212) 596-9090

**Attorneys for Richard Syron, Patricia L. Cook, and Anthony S. Piszel**

Jordan D. Hershman, Esq.
BINGHAM MCCUTCHEN LLP
One Federal Street
Boston, MA  02110-1726
Tel: (617) 951-8000
Fax: (617) 951-8736

**Attorneys for Federal Home Loan Mortgage Company**


*/s/ David J. George*
David J. George