UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JINO KURIAKOSE, Individually and On Behalf of All
Others Similarly Situated,

             Plaintiff,

    vs.

FEDERAL HOME LOAN MORTGAGE COMPANY,
RICHARD SYRON, PATRICIA L. COOK, and
ANTHONY S. PISZEL

             Defendants,

**Case No. 08 Civ. 7281 (JFK)**

**OPPOSITION OF THE FEDERAL HOUSING FINANCE AGENCY TO PLAINTIFF'S
MOTION TO DECLARE UNENFORCEABLE THE "NON PARTICIPATION" CLAUSE
IN FREDDIE MAC'S EMPLOYEE SEVERANCE AGREEMENTS**

       The Federal Housing Finance Agency ("FHFA" or "Conservator") as Conservator of the

Federal Home Loan Mortgage Corporation ("Freddie Mac") hereby opposes Plaintiff's Motion

to Declare Unenforceable the "Non-Participation" Clause in Freddie Mac's Employee Severance

Agreements (the "Motion").  The FHFA joins Freddie Mac's Opposition to the Motion and

incorporates all of its arguments herein.  The FHFA writes separately to emphasize that the

declaratory and injunctive relief requested by Plaintiff's Motion is wholly prohibited by

12 U.S.C. § 4617(f), which expressly provides that "no court may take any action to restrain or

affect the exercise of powers or functions of the Agency as . . . conservator" of Freddie Mac.

## I.    BACKGROUND

### A.    The FHFA as Conservator of Freddie Mac

The FHFA was established by the Housing and Economic Recovery Act of 2008

("HERA"),[1] which was signed into law on July 30, 2008.  Under HERA, the Director of the

FHFA may, at his discretion, appoint the FHFA conservator of a "regulated entity" in its charge

for the purpose of reorganizing, rehabilitating, or winding up the affairs of the regulated entity.[2]

12 U.S.C. § 4617(a).  On September 6, 2008, FHFA Director James Lockhart appointed the

FHFA as Conservator for Freddie Mac.[3]  As Conservator, the FHFA is now charged with the

responsibility to "preserve and conserve" Freddie Mac's assets and property.  *Id.*

§ 4617(b)(2)(B)(iv).  The conservatorship is designed to restore investor and public confidence

in Freddie Mac, enhance the institution's capacity to fulfill its statutory mission, and mitigate the

systemic risk that has contributed to market instability.[4]

To enable it to achieve these goals, Congress vested the Conservator with broad statutory

powers to act on behalf of Freddie Mac and its shareholders, directors, and officers.  Pursuant to

---

[1] *See* Housing and Economic Recovery Act of 2008, Pub. L. 110-289, 122 Stat. 2654.

[2] The term "regulated entity" means:  (1) Fannie Mae and its affiliates, (2) Freddie Mac and its affiliates, and (3) any Federal Home Loan Bank.  *See* 12 U.S.C. § 4502(20).

[3] At the same time, Fannie Mae was also placed into conservatorship by the Director.  Either of these two actions, if taken alone, would have been the largest regulatory takeover in the history of the United States.  The Director's actions were widely supported by other senior U.S. officials, including the Treasury Secretary and the Chairman of the Federal Reserve Board, both of whom stated publicly that placing Fannie Mae and Freddie Mac into FHFA Conservatorships was an action necessary to promote stability in the U.S. housing and financial markets.  *See* Statement by Secretary Henry M. Paulson, Jr. on Treasury and Federal Housing Finance Agency Action to Protect Financial Markets and Taxpayers (Sept. 7, 2008), *available at* http://www.treas.gov/press/releases/hp1129.htm (last visited Aug. 21, 2009); Statement by Federal Reserve Board Chairman Ben Bernanke (Sept. 7, 2008), *available at* http://www.federalreserve.gov/newsevents/press/other/20080907a.htm (last visited Aug. 21, 2009).

[4] *Fact Sheet:  Questions & Answers on Conservatorship*, Sep. 7, 2008, *available at* http://www.ofheo.gov/media/PDF/FHFACONSERVQA.pdf (last visited March 25, 2009); *see also* Fannie Mae, Current Report (Form 8-K), at 4 (Sep. 11, 2008).

12 U.S.C. § 4617(b)(2)(A), upon its appointment as Conservator, the FHFA "immediately

succeed[ed]" to "(i) all rights, titles, powers, and privileges of [Freddie Mac], and of any

stockholder, officer, or director of [Freddie Mac] with respect to [Freddie Mac] and the assets of

[Freddie Mac]."  Accordingly, the FHFA as Conservator is empowered to:

- "take over the assets of and operate [Freddie Mac] with all the powers of the shareholders, the directors, and the officers of [Freddie Mac] and conduct all business of [Freddie Mac]," *id*. § 4617(b)(2)(B)(i);

- "collect all obligations and money due the regulated entity," *id*. § 4617(b)(2)(B)(ii);

- "enforce any contract . . . entered into by [Freddie Mac]," *id*. § 4617(d)(13)(A);

- "take such action as may be necessary to put [Freddie Mac] in a sound and solvent condition;" *id*. § 4617(b)(2)(D)(i);

- "take any action authorized by this section, which the Agency determines is in the best interests of [Freddie Mac] or the Agency." *Id*. § 4617(b)(2)(J)(ii).

Most importantly, when the Conservator is acting pursuant to any of these statutory obligations,

"***no court may take any action to restrain or affect the exercise of powers or functions of the***

***Agency as . . . conservator***" for Freddie Mac.  *Id*. § 4617(f) (emphasis added).

### B.  Freddie Mac's Severance Agreements Are Assets of Freddie Mac that the Conservator is Statutorily Bound to "Preserve and Conserve."

As explained in Freddie Mac's Opposition, Plaintiff's arguments rely upon a "non-

participation" clause that is purely hypothetical.  *See* Freddie Mac Opp. at 5-7.  Plaintiff has

failed to present a single severance agreement to the Court, let alone a severance agreement

containing the sample clause of which Plaintiff complains.

Nevertheless, even if the Court were to assume that such severance agreements exist,

such agreements would constitute assets of Freddie Mac, which the Conservator is statutorily

obligated to "preserve and conserve." Because the Conservator "immediately succeed[ed]" to "all rights, titles, powers, and privileges" of Freddie Mac, the Conservator has succeeded to all of Freddie Mac's contractual rights, *id*. § 4617(b)(2)(A), and now possesses the ability to enforce any contract . . . entered into by [Freddie Mac]." *Id*. § 4617(d)(13)(A). Thus, the purported severance agreements at issue – as well as the ability to maintain and enforce them – are assets of Freddie Mac that the Conservator is authorized to "preserve and conserve," *id*. § 4617(b)(2)(B)(iv), free from any interference that would "restrain or affect" the Conservator's efforts. *Id*. § 4617(f).

Plaintiff now moves the Court to "declare the 'Non Participation' clause unenforceable and require Freddie Mac [in Conservatorship] to notify its former employees accordingly." Motion, 17.

## II.    ARGUMENT

### A.    This Court Lacks Jurisdiction to Declare the Clauses Unenforceable Because Such a Declaration Will Necessarily Restrain and Affect the Exercise of the Powers and Functions of the Conservator.

The declaratory relief sought by Plaintiff would necessarily "restrain or affect" the Conservator in the exercise of its statutorily authorized powers and functions. Thus, it is wholly barred by 12 U.S.C. § 4617(f) ("Section 4617(f)").

In a recent opinion issued by this Court – the first opinion interpreting this provision of HERA – Judge Jones held that Section 4617(f) "constrains the Court" in situations in which the requested relief "would be inconsistent with the Conservator's exercise of its statutory powers." *See Sadowsky Testamentary Trust v. Syron*, --- F. Supp. 2d ---, 2009 WL 1309776, at *2 (S.D.N.Y. May 6, 2009). As Judge Jones recognized, "[t]his ban is an essential part of HERA's comprehensive scheme for conservatorships and receiverships." *Id*. at *3. It precludes courts from taking any action that would "interfere with and potentially usurp precisely the powers

4

granted to the FHFA by HERA." *Id*.[5]  In analyzing the limits of the Court's authority under

§ 4617(f), Judge Jones relied upon cases interpreting 12 U.S.C. § 1821(j), the materially identical

provision contained in the Financial Institutions Reform, Recovery, and Enforcement Act of

1989 (FIRREA).[6]  *Id*. at *2.  As such, Judge Jones's opinion is consistent with the great weight

of authority interpreting materially identical statutory language to divest courts of jurisdiction to

grant injunctive or declaratory relief against a conservator or receiver acting pursuant to its

statutory functions.

        The Second Circuit has held that the statutory language contained in Section 4617(f) "is a

direct manifestation of Congress's intent to prevent courts from interfering with the [conservator

or receiver] in the exercise of its statutory powers."  *Volges v. Resolution Trust Corp*., 32 F.3d

50, 52 (2d Cir. 1994) (interpreting § 1821(j)).  This language bars not only injunctive relief

against a conservator, but also all equitable relief – including declaratory and rescission relief –

against a conservator.  *See Freeman v. FDIC*, 56 F.3d 1394, 1399 (D.C. Cir. 1995) ("Section

1821(j) does indeed effect a sweeping ouster of courts' power to grant equitable remedies…[and

it] bars the court from granting the [Plaintiffs'] plea for rescission"); *Ward v. Resolution Trust

Corp*., 996 F.2d 99, 104 (3d Cir. 1992) ("Like injunction, rescission is a 'judicial restraint' that is

---

[5]  The issue presented in *Sadowsky* was whether Freddie Mac's shareholders could continue to pursue shareholder derivative claims on behalf of Freddie Mac despite the Conservator's efforts to intervene and substitute for those shareholders. Judge Jones held, *inter alia*, that Section 4617(f) disallowed the shareholder plaintiffs from remaining as plaintiffs and granted the Conservator's Motion to Intervene and Substitute.  *Sadowsky*, 2009 WL 1309776 at *2-4.  Two additional district courts have since relied on Judge Jones's opinion in similar cases involving both Freddie Mac and Fannie Mae.  *See In re Federal Home Loan Mortgage Corp. Derivative Litig.*, --- F. Supp. 2d ---, 2009 WL 2421447, *5 (E.D. Va. July 27, 2009); *In re Federal Nat'l Mortgage Assoc. Securities, Derivative and "ERISA" Litig*., --- F. Supp. 2d ---, 2009 WL 1837757, at *2 n.4 (D.D.C. June 25, 2009).

[6]  *See also In re Federal Home Loan Mortgage Corp. Derivative Litig*., 2009 WL 2421447 at *3 ("the Court is persuaded by decisions that have reached the same conclusion when interpreting [FIRREA], whose provisions regarding the powers of bank receivers and conservators are substantially identical to those of HERA.").

barred by 1821(j).")"; *St. George Maronite Catholic Church v. Green*, No. SA-94-CA-334, 1994 WL 763743, 6-7 (W.D. Tex. July 25, 1994) (section 1821(j) "bars any relief that would affect the contract between [the Conservator] and [a third party], whether that relief is termed rescission, declaratory, or anything else").

Furthermore, the statutory language of Section 4617(f) operates as a complete bar to equitable relief against the Conservator, even in the presence of allegations that the Conservator's actions are contrary to state or federal law. *See Volges*, 32 F.3d at 52 ("[T]he fact that the [conservator or receiver]'s actions might violate some other provision of law does not render [§ 1821(j)] inapplicable."); *Ward*, 996 F.2d at 104 ( "even if the RTC improperly or unlawfully exercised an authorized power or function, it clearly did not engage in an activity outside its statutory powers").[7]  As the D.C. Circuit has recognized:

> We do not think it possible, in light of the strong language of § 1821(j), to interpret the FDIC's "powers" and "authorities" to include the limitation that those powers be subject to – and hence enjoinable for non-compliance with any and all other federal laws. While Congress has included such provisos in some statutes immunizing agency action from outside second-guessing, *see, e.g.*, 5 U.S.C. § 7106(a)(2) (management rights immunized from arbitral review under Federal Labor Relations Act only when exercised "in accordance with applicable laws"), we see no such limitation in § 1821(j).

*Nat'l Trust for Historic Preservation v. FDIC*, 995 F.2d 238, 240 (D.C. Cir. 1993) ("*Nat'l Trust I*"), *reinstated in relevant part* at 21 F.3d 469, 470 (D.C. Cir. 1994) ("*Nat'l Trust II*"); *see also Nat'l Trust II*, 21 F.3d at 472 (Wald, J. concurring) ("the statute would appear to bar a court from

---

[7]  For example, this statutory language has been held to prevent equitable relief against a conservator or receiver despite allegations – and, indeed evidence – of the conservator or receiver's non-compliance with ERISA, *Rosa v. Resolution Trust Corp.*, 938 F.2d 383, 397 (3d Cir. 1991), the Truth in Lending Act ("TILA"), *Conroy v. FDIC*, No. 95-11658, 1995 WL 598961, *3-6 (D. Mass. Sept. 15, 1995), and the National Historic Preservation Act ("NHPA"), *Nat'l Trust II*, 21 F.3d at 470.

acting in virtually all circumstances"). Accordingly, this statutory language has been held to preclude equitable relief even when there are allegations that a contract with the conservator or receiver is void *ab initio*. *See Freeman*, 56 F.3d at 1398-99 (relief denied despite allegation that agreement with receiver were "void *ab initio* on the grounds of fraud in the factum"); *Darden v. Resolution Trust Corp.*, No. 393cv13-D-D, 1995 WL 1945486, *2 (June 25, 1995) (relief denied despite allegation that contract between receiver and third party was "void *ab initio*"); *St. George*, 1994 WL 763743 at *4 (relief denied despite allegation that contract between receiver and a third party was void as a result of "fraud, a breach of good faith and fair dealing, and deceptive trade practices").

In sum, the "only relevant question" in conducting an analysis under Section 4617(f) "is whether the conservator or receiver is carrying out a statutory function or power." *Furgatch v. Resolution Trust Corp.*, No. 93-20304, 1993 WL 149084, *2 (N.D. Cal. April 30, 1993) (citing *In re Landmark Land Co. of Oklahoma,* 973 F.2d 283 (4th Cir. 1992); *Rosa v. Resolution Trust Corp.,* 938 F.2d 383 (3d Cir. 1991); *281-300 Joint Venture v. Onion,* 938 F.2d 35, 39 (5th Cir. 1991). If so, equitable relief is entirely precluded against the Conservator.

Here, the Conservator is acting well within its statutory powers or functions. As described above, the Conservator has the statutory authority to "take over the assets of" Freddie Mac, § 4617(b)(2)(B)(i), to "conduct all business" Freddie Mac, *id*. § 4617(b)(2)(B)(i), to "collect all obligations and money due" to Freddie Mac, *id*. § 4617(b)(2)(B)(ii), and to "take any action . . . which the Agency determines is in the best interests of" Freddie Mac. *Id*. § 4617(b)(2)(J)(ii). Most pertinent to the present case, the Conservator has the power to "***enforce any contract*** . . . entered into by" Freddie Mac. *Id*. § 4617(d)(13)(a) (emphasis added). Clearly, severance agreements are contracts entered into by Freddie Mac and, thus, reflect assets

of Freddie Mac over which the Conservator has sole authority. *See id.* § 4617(b)(2)(B)(iv).

"Congress has determined that responsibility for deciding how to best preserve and conserve

Fannie Mae's [and Freddie Mac's] assets lies *solely with FHFA* for the conservatorship period."

*In re Federal Nat'l Mortgage Assoc.*, 2009 WL 1837757, at *2 n.4 (emphasis added); *see also In*

*re Federal Home Loan Mortgage Corp.*, 2009 WL 2421447 at *5 (same, noting the

Conservator's "broad, sweeping authority over Freddie Mac's assets"). By maintaining and

enforcing Freddie Mac's severance agreements, the Conservator is acting squarely within its

statutory powers and functions. As such, this Court lacks jurisdiction under Section 4617(f) to

declare these agreements unenforceable, as such a declaration would necessarily "restrain or

affect" the Conservator's powers and functions.

     To the extent Plaintiff relies on generalized state law public policy concerns in his

attempt to invalidate the agreements, those concerns are vastly outweighed by the express

policies manifested in HERA to permit the Conservator to manage Freddie Mac without judicial

interference. When making determinations as to the enforceability of agreements, this Court

"must consider competing public policy concerns," *Xerox Corp. v. Media Sciences, Inc.*, 609 F.

Supp. 2d 319, 325 (S.D.N.Y. 2009), and declare an agreement void "only where it is clearly

contrary to the public interests." *Id.* (quoting *Madison Square Garden, L.P. v. NHL*, No.

07cv8455, 2008 WL 4547518, *7 (S.D.N.Y. Oct. 10, 2008)). Here, the controlling public policy

consideration is that the Conservator must be permitted to "preserve and conserve" the assets of

Freddie Mac without intrusion. *See Volges*, 32 F.3d at 52 (describing the analogous § 1821(j) as

a "direct manifestation of Congress's intent to prevent courts from interfering with the

[conservator or receiver] in the exercise of its statutory powers"). This critically important and

express public policy outweighs any other public policy considerations cited by Plaintiff.[8]

Furthermore, Plaintiff's attempted interference with the powers and functions of the Conservator is especially egregious where, as here, Plaintiff is a complete stranger to the agreements. As more fully explained in Freddie Mac's Opposition, Plaintiff has failed to demonstrate – and indeed, cannot demonstrate – how, as a complete stranger to the agreements, he possesses standing to challenge their enforceability. *See* Freddie Mac Opp. at 3-4. "Ordinarily, only a party (actual or alleged) to a contract can challenge its validity . . . . Obviously the fact that a third party would be better off if a contract were unenforceable does not give him standing to sue to void the contract." *In re Vic Supply Co.*, 227 F.3d 928, 930-31 (7th Cir.2000). In this case, Plaintiff has demonstrated only how *Plaintiff* would be "better off" if the agreements were unenforceable and, in so doing, has implicitly conceded that his Amended Complaint lacks sufficient facts to survive a motion to dismiss. *See* Motion at 13-14 (explaining how the information purportedly obtainable from Freddie Mac's former employees would aid Plaintiff in satisfying his burden under the PSLRA).

Though this standing principle alone would be sufficient to defeat Plaintiff's requested relief, the facts presented here dictate an even clearer result by virtue of the enhanced statutory protections unique to the Conservator. Plaintiff is clearly attempting to interfere with the contractual relations of the Conservator by challenging the enforceability of the agreements. Such interference is precluded by Section 4617(f), which "bars any relief that would affect the contract between [the Conservator] and [a third party], whether that relief is termed rescission,

---

[8]    Additionally, numerous courts have held that the language of Section 4617(f) prevents judicial interference with contracts, even when there are allegations that the contracts are otherwise illegal or invalid. *See, e.g.*, *Freeman*, 56 F.3d at 1398-99 (holding that the court lacked jurisdiction to declare contracts "void *ab initio* on the grounds of fraud in the factum"); *Darden*, 1995 WL 1945486, *2 (same); *St. George*, 1994 WL 763743 at *4 (same). *See also supra* at 6-7.

declaratory, or anything else." *St. George Maronite Catholic Church*, 1994 WL 763743 at* 6-7.

Indeed, to allow such a far-reaching challenge to proceed against the Conservator would expose

it to overly intrusive and potentially limitless suits by non-parties attempting to interfere with the

contractual relations of the Conservator.  Such an imposition would no doubt "restrain or affect"

the Conservator in the pursuit of its statutory powers and functions, and is plainly barred by

HERA.

> **B.     This Court Lacks Jurisdiction to Impose a Mandatory Injunction Against Freddie Mac in Conservatorship.**

Not only does Plaintiff seek declaratory relief which would effectively "restrain or effect"

the exercise of the Conservator's powers, Plaintiff seeks a direct, mandatory injunction against

Freddie Mac, which would force Freddie Mac to notify all of its former employees subject to a

severance agreement that portions of that agreement are no longer valid.  A mandatory injunction

constitutes "extreme" relief in any case, *see John Labatt Ltd. v. Onex Corp*., 890 F. Supp. 235,

244 (S.D.N.Y. 1995) and, as explained in Freddie Mac's Opposition, Plaintiff has wholly failed

to satisfy the standards for obtaining such relief.  *See* Freddie Mac Opp. at 6-7.

In this case, mandatory injunctive relief would not only be "extreme," but also would be

directly contrary to the plain language of Section 4617(f), which serves as an absolute bar to

injunctive relief against a conservator acting pursuant to its statutory powers and functions.  *See*

*Freeman*, 56 F.3d at 1399 (holding that identical language "bar[s] injunctive relief"); *Ward*, 996

F.2d at 102 ("courts lack the ability to enjoin [actions] that are within the statutory powers" of a

conservator) (quoting *281-300 Joint Venture,* 938 F.2d at 39).  The requested mandatory

injunction would directly restrain the Conservator's maintenance and enforcement of Freddie

Mac's contracts, impermissibly inhibiting the Conservator's power to "operate" and "conduct all

business" of Freddie Mac.  12 U.S.C. § 4617(b)(2)(B)(i).  Such an injunction would also result in

the forced expenditure of Freddie Mac's resources, which the Conservator has the duty to

"preserve and conserve." *Id.* § 4617(b)(2)(B)(iv).  Because Congress has given the Conservator

the sole authority to determine what is in the "best interests" of Freddie Mac, *id.*

§ 4617(b)(2)(J)(ii), it is the Conservator's duty alone to determine how to operate Freddie Mac

and how to expend its valuable resources.  Accordingly, just as this Court lacks jurisdiction to

declare the agreements unenforceable, this Court also lacks jurisdiction to impose the requested

mandatory injunctive relief.

## CONCLUSION

For the foregoing reasons, the Conservator requests that the Court deny Plaintiff's

Motion to Declare Unenforceable the "Non Participation" Clause in Freddie Mac's Severance

Agreements.

Dated: New York, New York
   August 21, 2009

          Respectfully Submitted

          ARNOLD & PORTER LLP

*Of Counsel*:

Howard N. Cayne
David B. Bergman
ARNOLD & PORTER, LLP
555 Twelfth Street, N.W.
Washington, DC 20004

-and-

Stephen E. Hart
Federal Housing Finance Agency
1700 G Street, N.W.
Washington, D.C. 20552
(202) 414-3800

          By: /s/Kent A. Yalowitz_____
           Kent A. Yalowitz
           ARNOLD & PORTER LLP
           399 Park Avenue
           New York, NY 10022-4690
           T:  212-715-1000
           E-mail:  kent.yalowitz@aporter.com

          *Attorneys for the Federal Housing Finance Agency*

## CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2009, a true and correct copy of the foregoing OPPOSITION OF THE FEDERAL HOUSING FINANCE AGENCY TO PLAINTIFF'S MOTION TO DECLARE UNENFORCEABLE THE "NON PARTICIPATION" CLAUSE IN FREDDIE MAC'S EMPLOYEE SEVERANCE AGREEMENTS was sent via E-Mail and Federal Express to the following:

David J. George
COUGHLIN STOIA GELLER RUDMAN
& ROBBINS LLP
120 E. Palmetto Park Road, Suite 500
Boca Raton, FL 33432-4809
Telephone: 561/750-3000
561/750-3364 (fax)
dgeorge@csgrr.com

*Lead Counsel for Plaintiffs*

Russell Lawrence Lippman, Esq.
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036-8704
Tel: (212) 596-9000
Fax: (212) 596-9090

*Attorneys for Richard Syron, Patricia L. Cook, and Anthony S. Piszel*

Louis P. Malone III
O'DONOGHUE & O'DONOGHUE LLP
4748 Wisconsin Avenue, N.W.
Washington, D.C. 20016
Telephone: 202/362-0041
202/362-2640 (fax)
lmalone@odonoghuelaw.com

*Co-Counsel for National Elevator Industry Pension Plan and the Class*

Jordan D. Hershman, Esq.
BINGHAM MCCUTCHEN LLP
One Federal Street
Boston, MA 02110-1726
Tel: (617) 951-8000
Fax: (617) 951-8736

*Attorneys for Federal Home Loan Mortgage Company*

  /s/Kent A. Yalowitz_____
Kent A. Yalowitz