**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------X
JINO KURIAKOSE, Individually and On    :
Behalf of All Others Similarly Situated,
                                       :
                  Plaintiff,
                                       :    **Opinion and Order**
        -against-                           08-cv-7281 (JFK)
                                       :

FEDERAL HOME LOAN MORTGAGE CO.,        :
RICHARD SYRON, PATRICIA L. COOK,
and ANTHONY S. PISZEL,                 :

                  Defendants,          :

                                       :
FEDERAL HOUSING FINANCE AGENCY,
                                       :
                  Intervenor.
----------------------------------------X
APPEARANCES:

FOR LEAD PLAINTIFF CENTRAL STATES, SOUTHEAST AND SOUTHWEST
AREAS PENSION FUND:

        Paul J. Geller, Esq.
        David J. George, Esq.
        Robert J. Robbins, Esq.
        James L. Davidson, Esq.
        COUGHLIN STOIA GELLER RUDMAN
        & ROBBINS LLP

FOR DEFENDANT FEDERAL HOME LOAN MORTGAGE CO.:

        Kenneth I. Schacter, Esq.
        Jordan D. Hershman, Esq.
        Jason D. Frank, Esq.
        BINGHAM McCUTCHEN LLP

FOR DEFENDANTS RICHARD SYRON, PATRICIA L. COOK, and
ANTHONY S. PIZEL:

        Russell L. Lippman, Esq.
        Randall W. Bodner, Esq.
        Christopher G. Green, Esq.

                    C. Thomas Brown, Esq.
                    ROPES & GRAY LLP

        FOR INTERVENOR FEDERAL HOUSING FINANCE AGENCY

                    Kent A. Yalowitz, Esq.
                    Howard N. Cayne, Esq.
                    David B. Bergman, Esq.
                    ARNOLD & PORTER LLP

**JOHN F. KEENAN, United States District Judge:**

        Lead  Plaintiff  Central  States,  Southeast  and  Southwest
Areas  Pension  Fund  brings  two  motions  on  behalf  of  a  proposed
class  (collectively  the  "Plaintiffs")  during  the  Private
Securities  Litigation  Reform  Act's  ("PSLRA")  discovery  stay  in
an  apparent  attempt  to  obtain  additional  evidence  with  which  to
oppose  Federal  Home  Loan  Mortgage  Co.'s  ("Freddie  Mac")
anticipated  motion  to  dismiss.    First,  Plaintiffs  move  to
partially  lift  the  PSLRA  discovery  stay  to  obtain  documents
produced  by  Freddie  Mac  in  conjunction  with  several  active
government  investigations.    Plaintiffs  also  move  to  declare
unenforceable  a  contractual  provision  allegedly  contained  within
many  Freddie  Mac  severance  agreements  which  Plaintiffs  contend
has  prevented  them  from  interviewing  former  employees  of  Freddie
Mac.

                              **I. BACKGROUND**

        Freddie  Mac  is  the  publicly-traded  government-sponsored
enterprise  chartered  by  Congress  in  1970  to  provide  stability  in

the secondary market for residential mortgages, to increase the liquidity of mortgage investments, and to improve the distribution of investment capital available for residential mortgage financing. See 12 U.S.C. § 1451 Note. The value of Freddie Mac's common stock fell precipitously amidst the deterioration of the U.S. housing and sub-prime mortgage market. In September 2008, the Federal Housing Finance Agency ("FHFA") placed the company into conservatorship due to its inadequate capital base from losses in mortgage holdings.

This action is brought on behalf of all persons who purchased Freddie Mac equity securities between November 20, 2007, through and including September 7, 2008. The Amended Complaint in this action asserts that Freddie Mac and several of its directors and/or officers violated § 10(b) and § 20(a) of the Securities Exchange Act of 1934, and Rule 10b-5 promulgated thereunder, by allegedly misrepresenting to investors the soundness of the company's mortgage portfolio, its underwriting standards, and the sufficiency of its capital. (Am. Compl. ¶¶ 1-2, 14-15.)

Freddie Mac also has been the subject of several government investigations regarding its role in the housing crisis. On December 9, 2008, the House Committee on Oversight and Government Reform (the "House Committee") held a hearing on "The Role of Fannie Mae and Freddie Mac in the Financial Crisis."

According to Plaintiffs, the House Committee obtained nearly 400,000 documents from Fannie Mae and Freddie Mac in connection with this hearing. Freddie Mac's public disclosures also reveal that it is being investigated by the Securities and Exchange Commission (the "SEC") and the United States Attorney's Offices (the "USAO") for the Southern District of New York and the Eastern District of Virginia.[1] To date, these entities have not filed actions against Freddie Mac.

Pursuant to the PSLRA, discovery has been stayed in this matter during the pendency of a motion to dismiss. In an attempt to fill the void created by this stay provision, after filing the Complaint, Plaintiffs' counsel has retained investigators to contact numerous former employees of Freddie Mac to solicit information relevant to Plaintiffs' claims, including the facts underlying the alleged fraud. Counsel contends that twenty-two former Freddie Mac employees have declined to speak with investigators because of a "non-participation" clause contained in their severance agreements with Freddie Mac. According to Plaintiffs' counsel, the clause states as follows:

> You acknowledge that in the absence of this agreement you have the right voluntarily to assist others in

---

[1]  At oral argument, the parties informed the Court that the USAO for the Southern District of New York is no longer involved in the investigation of Freddie Mac; the Eastern District of Virginia has taken the lead on behalf of the USAO.

bringing claims against the released parties. By signing below, you agree to waive this right. Therefore, except as otherwise provided in the agreement, you agree that you will not encourage, counsel, or assist any attorney, their clients, or any other person (including current or former Freddie Mac employees) in bringing or prosecuting any claim, charges, or complaints against the released parties, unless pursuant to a valid subpoena or court order to produce documents or testify, or unless you have been requested by an agency of the United States government or state or local government (collectively "government agency") to assist in a government agency investigation or proceeding. To the extent that you are requested by any government agency to participate or assist in a government agency investigation or proceeding, or to the extent that any law may prohibit you from waiving your right to bring or participate in the investigation of a claim, you nevertheless waive any right you otherwise might have to seek or accept any damages or release in any proceeding. Furthermore, to the extent that you file any claim against Freddie Mac or any claim is filed on your behalf against Freddie Mac, you agree not to seek or accept any damages or other relief as a result of such claims.

(Pl. Non-Participation Mem. at 13.) Plaintiffs submit four affidavits of investigators with whom the twenty-two former Freddie Mac employees declined to speak. In their affidavits, the investigators (a) state that each of the twenty-two employees noted their severance agreement as a reason for declining an interview; and (b) set forth the specific topics on which they believe the former employees may have pertinent information.

## II. THE INSTANT MOTIONS

Plaintiffs move to partially lift the PSLRA discovery stay, seeking to obtain all documents produced to the House Committee, SEC, and USAO in the course of their investigations, including transcripts of any interviews conducted in connection with such investigations. Plaintiffs argue that courts routinely modify the PSLRA discovery stay when defendants already have produced documents pursuant to government investigations and doing so would not frustrate the purposes of the PSLRA. (Pl. PSLRA Mem. at 7-9, 16-19.) Plaintiffs further argue that they would incur "undue prejudice" absent a lifting of the PSLRA discovery stay since there is much uncertainty surrounding the future of Freddie Mac and currently they are "the only major interested party in the criminal and civil proceedings . . . without access to the essential documents." (Pl. PSLRA Mem. at 11.)

Plaintiffs also seek a court order declaring unenforceable the non-participation clause contained within many Freddie Mac severance agreements. Plaintiffs contend that the provision is contrary to public policy in that it prohibits employees from disclosing the illegal activities of their former employer which "can be harmful to the public's ability to rein in improper behavior, and in some contexts ability of the United States to

police violations of its laws." <u>Chambers v. Capital Cities/ABC</u>, 159 F.R.D. 441, 444 (S.D.N.Y. 1995).

### A. Motion to Lift the PSLRA Discovery Stay

The PSLRA provides that "all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party." 15 U.S.C. § 78u-4(b)(3)(B).

Plaintiffs argue that the Court should lift the stay because the documents already have been produced to third parties — i.e., the House Committee, USAO, and SEC. That consideration certainly bears on whether the document request is adequately particularized. Plaintiffs request only this finite, identifiable set of materials that Freddie Mac most likely could produce at relatively little expense because they already have been compiled, reviewed, and produced. This consideration alone, however, is insufficient to lift the discovery stay. Contrary to Plaintiffs' assertion, courts do not routinely lift the PSLRA discovery stay when the requested documents have already been provided to government investigators. <u>See, e.g.</u>, <u>In re Refco, Inc.</u>, 05 Civ. 8626, 2006 WL 2337212, at *2 (S.D.N.Y. Aug. 8, 2006) ("As a generalized matter, the mere fact that documents have been provided to a third party does not entitle

plaintiffs to a modification of the stay to obtain those documents."); In re Smith Barney Transfer Agent Litig., No. 05 Civ. 7583, 2006 WL 1738078, at *3 (S.D.N.Y. June 26, 2006) (holding that it is "irrelevant" whether requested material already had been produced to the government because the "proper inquiry under the PSLRA is whether the plaintiff would be unduly prejudiced by the stay, not whether the defendant would be burdened by lifting the stay"); In re Vivendi Universal S.A. Sec. Litig., 381 F. Supp. 2d 129, 129 (S.D.N.Y. 2003) (denying motion to lift PSLRA stay where documents at issue were "already produced by defendants to the United States Department of Justice, Securities and Exchange Commission," and other regulatory agencies "in connection with civil and criminal investigations for misconduct by defendants").

It is clear from the face of the statute that the court also must find that lifting the discovery stay is necessary to preserve evidence or prevent undue prejudice.[2]  As this Court stated in Aspen Tech:

> Although courts have considered the goals of the PSLRA
> and the burden of production on defendants in
> determining whether to lift stays of discovery, the
> mere fact that the PSLRA's goals would not be
> frustrated by the lifting of the stay and the
> documents at issue already have been provided to the
> SEC and USAO is not sufficient to warrant lifting the
> stay.  According to express statutory language, the

---

[2]  The evidence preservation exception was not been raised by Plaintiffs and is not applicable.

> PSLRA's discovery stay may be lifted only if a court
> finds that doing so is necessary to preserve evidence
> or prevent undue prejudice.  Counter to Plaintiffs'
> contention, even where the goals of the PSLRA are not
> frustrated and a plaintiffs' discovery request is
> limited to documents already produced to government
> regulators, courts have refused to lift the discovery
> stay if the narrow statutory exceptions of evidence
> preservation or undue prejudice have not been met.

380544 Canada, Inc. v. Aspen Tech., Inc., No. 07 Civ. 1204, 2007 WL 2049738, at *2 (S.D.N.Y. July 18, 2007) (citations omitted).

The Second Circuit has not defined what constitutes "undue prejudice" in this context.  This Court has defined "undue prejudice" for the purposes of the PSLRA discovery stay to mean "improper or unfair treatment amounting to something less than irreparable harm." Id. at *1; see also In re Smith Barney, 2006 WL 1738078, at *2; Taft v. Ackermans, No. 02 Civ. 7951, 2005 WL 850916, at *4 (S.D.N.Y. Apr. 13, 2005).  Plaintiffs rely on In re WorldCom, Inc. Sec. Litig., 234 F. Supp. 2d 301 (S.D.N.Y. 2002) and In re LaBranche Sec. Litig., 333 F. Supp. 2d 178 (S.D.N.Y. 2004) in support of their argument that leaving the discovery stay in place would result in undue prejudice. However, these cases are distinguishable from the instant action and do not compel Plaintiffs' requested relief.

In LaBranche, defendant agreed to pay more than $63.5 million to settle actions brought by the SEC and the New York Stock Exchange arising from the same unlawful schemes pleaded by the PSLRA plaintiffs.  The court lifted the discovery stay,

finding that the PSLRA plaintiffs were the only interested party without access to the requested documents and they otherwise would be "prejudiced by their inability to make informed decisions about their litigation strategy in this rapidly shifting landscape." 333 F. Supp. 2d at 183. The <u>LaBranche</u> court suggested that typically it would be "premature" to lift a discovery stay when plaintiffs assert that they are being prejudiced in light of an "impending" settlement, but in that action there had been an "actual" settlement in place. <u>Id.</u>

In <u>WorldCom</u>, the court ordered the PSLRA plaintiffs to participate with the insolvent defendant in coordinated settlement discussions along with plaintiffs in a related ERISA litigation. The ERISA plaintiffs, unhampered by the requirements of the PSLRA, were in the process of obtaining discovery. The court found that because the proceedings were "moving apace" through the court-ordered settlement negotiations, without access to the documents available to the ERISA plaintiffs the PSLRA plaintiffs would have been at a "severe[] disadvantage[]" in the settlement discussions. 234 F. Supp. 2d at 305-06.

The courts in <u>WorldCom</u> and <u>LaBranche</u> lifted the PSLRA discovery stay because of the undue prejudice arising from the "unique circumstances" in each case. Standing alone, however, the mere fact "that the discovery stay will prevent Plaintiffs

from collecting evidence to assist in potential settlement negotiations or plan their litigation strategy does not constitute undue prejudice." Aspen Tech, 2007 WL 2049738, at *4. Similarly, the mere fact that government entities have been provided the discovery that Plaintiffs must wait to obtain "does not rise to the level of undue prejudice." Aspen Tech, 2007 WL 2049738, at *4. The delay faced by Plaintiffs is inherent in every PSLRA-mandated discovery stay. Id.; see also In re Smith Barney, 2006 WL 1738078, at *2. As Judge Lynch explained in Refco:

> Whether PSLRA plaintiffs should be subjected to a discovery stay while other parties, who are bringing claims under other causes of action, are not subjected to a stay is a question for Congress, and one that Congress has answered. Under the PSLRA, discovery in this action has been stayed. That stay does not apply to government investigations, bankruptcy proceedings, internal investigations, or non-PSLRA actions. The discrepancy between PSLRA actions and other actions is not evidence of undue prejudice, but rather evidence of Congress's judgment that PSLRA actions should be treated differently than other actions. This Court may not second-guess that judgment.

2006 WL 2337212, at *2.[3]

---

[3] In In re Bank of America Corporate Securities, Derivative, Employment Retirement Income Securities Act (ERISA) Litigation, No. 09 MDL 2058, slip op. at *5 (S.D.N.Y. Nov. 16, 2009), the Court lifted the PSLRA discovery stay in a consolidated action consisting of securities, derivative, and ERISA plaintiffs, to allow the PSLRA plaintiffs to obtain the same documents produced in government investigations that the derivative and ERISA plaintiffs were not statutorily restricted from obtaining. To the extent that In re Bank of America stands for the proposition that plaintiffs are unduly prejudiced by the mere fact that

Plaintiffs point to several events that purportedly evidence that Freddie Mac is a "rapidly shifting landscape" and allegedly hinder their ability to make informed decisions regarding their litigation strategy: (1) Freddie Mac is currently the subject of investigations by Congress, the SEC, and the USAO; (2) Freddie Mac is currently under conservatorship of the FHFA and has relied on several bailouts from the Treasury in order to maintain an adequate capital base; (3) there has been turnover within Freddie Mac management, including the resignation of CEO, David Moffet, after only six months on the job, and the death of acting CFO, David Kellerman. (Pl. PSLRA Mem. at 12-13, Reply at 3-5.)

First, unlike LaBranche and Worldcom, Plaintiffs' inability to access information produced by Freddie Mac in connection with ongoing investigations by the House Committee, USAO, and SEC does not result in undue prejudice. As noted in Defendant's brief, "there are no criminal or civil governmental or administrative actions pending against any Defendant; there are no settlement discussions with anyone pending or planned; Freddie Mac is not in bankruptcy." (Def. PSLRA Opp'n at 18.) It is possible that at a future date the Plaintiffs could be

---

discovery is proceeding in other cases causing the PSLRA plaintiffs comparatively to be less able to make informed decisions regarding litigation strategy, I do not regard it as an accurate interpretation of the law in this circuit.

prejudiced by a disposition in a yet to be filed government action. However, "[t]he mere possibility that Plaintiffs could be prejudiced if settlement talks ensue in the future . . . is not enough for the Court to find that Plaintiffs will suffer undue prejudice as a result of the discovery stay." Aspen, 2007 WL 2049738, at *3; see also In re Refco, 2006 WL 2337212, at *3 ("Mere speculation about highly contingent possibilities of future prejudice does not demonstrate that lifting the stay is necessary . . . to prevent undue prejudice that would otherwise result.").

Nor does the fact that Freddie Mac accepted federal bailouts and endured management turnover amount to undue prejudice. The court's use of the term "rapidly shifting landscape" in LaBranche was not in regard to the stability of senior management or the company's future business prospects, but was in reference to activity in related actions and its present effect on the Plaintiffs' ability to recover. There may be doubts regarding Freddie Mac's ongoing viability, but the prospect of prejudice from the contingent risks to the defendant's long-term business viability is insufficient to lift the stay.

Plaintiffs have failed to show that they will suffer any undue prejudice if the discovery stay remains in place, and therefore the motion is denied.

## B. Motion to Declare Unenforceable the "Non Participation" Clause in Freddie Mac's Severance Agreements

Plaintiffs claim that the "non-participation" clause at issue is contrary to public policy because it prevents former employees from voluntarily disclosing facts relating to the alleged fraud.  Although the Court notes that similar clauses have been upheld, see, e.g., Cooper Tire & Rubber Co. v. Farese, 423 F.3d 446, 456-58 (5th Cir. 2005) (holding that a non-participation agreement was neither illegal nor unconscionable because it served "a valid legal purpose" and is "common in situations where two parties terminate their employment relationship by contract"); Yockey v. Horn, 880 F.2d 945, 951 (7th Cir. 1989) (finding that the agreement "is not obstructive" because it "does not preclude participation in litigation"), the Court first must determine whether Plaintiffs have standing to raise this challenge and whether the Court has jurisdiction to decide it.

Freddie Mac argues that Plaintiffs lack standing to challenge these contracts, specifically arguing that Plaintiffs have failed to establish injury.  The FHFA incorporates Freddie Mac's standing argument and also wrote separately to emphasize that the relief requested in Plaintiffs' motion is prohibited by the Housing and Economic Recovery Act of 2008.

## 1.  Standing

It is "a fundamental tenet of American jurisprudence" that federal courts have limited jurisdiction. <u>Verlinden B.V. v. Cent. Bank of Nig.</u>, 647 F.2d 320, 321 (2d Cir. 1981), <u>rev'd on other grounds</u>, 461 U.S. 480 (1983).    Article III of the Constitution limits a federal court's jurisdiction to actual "cases and controversies" and the standing doctrine "serves to identify those disputes which are appropriately resolved through the judicial process." <u>Whitmore v. Arkansas</u>, 495 U.S. 149, 155-56 (1990).    The party invoking federal jurisdiction bears the burden of satisfying three elements to establish the "irreducible constitutional minimum of standing." <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992).    First, the plaintiff must have suffered an "injury in fact" which is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." <u>Id.</u>; <u>see also</u> <u>Whitmore</u>, 495 U.S. at 155.    Second, there must be a causal connection between the injury and defendant's conduct. <u>Lujan</u>, 504 U.S. at 560 ("[T]he injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." (citation and modification omitted)).    Third, it must be "likely" that a favorable decision by the court will redress the injury. <u>Id.</u> at 561.

Since standing is a constitutional doctrine and not merely a pleading requirement, "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof." Id. Plaintiffs seek a court order declaring void a specific provision within Freddie Mac's severance agreements. In seeking a final declaration from the Court, Plaintiffs cannot rely on mere allegations; there must be admissible evidence to adequately support standing. See New Creation Fellowship of Buffalo v. Town of Cheektowaga, 164 Fed. Appx. 5, 6-7 (2d Cir. 2005) (granting motion for summary judgment because plaintiff "failed to proffer any admissible evidence" to establish standing); cf. Lujan, 504 U.S. at 561 ("[A]t the final stage, [controverted] facts must be supported adequately by the evidence adduced at trial.").

Plaintiffs claim to have sustained injury from the Freddie Mac severance agreements in that the non-participation clause infringes on their right to investigate their claims by conducting interviews with potential witnesses. They point to several cases in which courts have found certain confidentiality agreements void on the basis of public policy. See, e.g., IBM v. Edelstein, 526 F.2d 37, 41 (2d Cir. 1975) (finding that the lower court exceeded its authority by barring witness interviews in the absence of opposing counsel because the restrictions on interviews "not only impair the constitutional right to

effective assistance of counsel but are contrary to time-honored and decision-honored principles, namely, that counsel for all parties have a right to interview an adverse party's witnesses (the witness willing) in private"); Chambers, 159 F.R.D. at 444 ("Absent possible extraordinary circumstances not involved here, it is against public policy for parties to agree not to reveal, at least in the limited contexts of depositions or pre-deposition interviews concerning litigation arising under federal law, facts relating to alleged or potential violations of such law."); In re JDS Uniphase Corp. Sec. Litig., 238 F. Supp. 2d 1127, 1137 (N.D. Cal. 2002) ("To the extent that [the confidentiality] agreements preclude former employees from assisting in investigations of wrongdoing that have nothing to do with trade secrets or other confidential business information, they conflict with public policy in favor of allowing even current employees to assist in securities fraud investigations."); In re Tyco Int'l Ltd. Sec. Litig., No. 00 MD 1335, 2001 WL 34075721, at *3 (D.N.H. Jan. 30, 2001) (denying defendant's motion for a protective order to bar plaintiff's counsel from interviewing former employees during the PSLRA discovery stay because "[t]he right to conduct such investigations is protected and is not impaired by the PSLRA").

Only two of the cases cited by Plaintiff involved shareholder plaintiffs challenging severance agreements on

behalf of the restrained former employees. See Chambers, 159 F.R.D. 441; In re JDS Uniphase Corp. Sec. Litig., 238 F. Supp. 2d 1127. The court in JDS Uniphase did not address standing at all. In Chambers, unlike the present matter, the contractual provision at issue precluded the employees from providing deposition testimony. The court concluded that plaintiffs had standing to challenge the contractual provision in the context of a discovery dispute. The court made clear that the agreements at issue "are presented solely in the context of the extent to which such agreements may or may not be used in a manner precluding discovery procedures in this federal litigation." 159 F.R.D. at 444. This is not the case here. Discovery presently is stayed and the relief requested by Plaintiffs is not limited to the contract's effect on discovery in the instant matter. In fact, the agreement has no effect on formal discovery because it only precludes the former employees from voluntarily assisting Plaintiffs' counsel absent a subpoena or court order.

Plaintiffs may be correct that they have a right to speak with these former employees, and they may be correct that the contractual provision at issue is contrary to public policy. Former employees, however, are not obligated to assist counsel for Lead Plaintiff by voluntarily submitting to an interview with its investigators. There are endless reasons why a former

employee may decline an interview:  the employee may have a sense of loyalty to a former employer; he may be hesitant to become entangled in a legal dispute; he may just not care.  To establish standing, therefore, plaintiffs must show that the former employees declined an interview because of the non-participation clause, not for an independent reason. Lujan, 504 U.S. at 560.

Plaintiffs submitted affidavits from the investigators who claim that the former employees declined to speak with them because of their severance agreement.  It may be that the former employees indeed told the investigators as such, but these hearsay statements are not admissible for the truth of the matter asserted.  There is not an affidavit before the Court from any former Freddie Mac employee providing that he would have assisted counsel but for his severance agreement, and therefore Plaintiffs' alleged injury is based on nothing more than hearsay and speculation.  Without a concrete and particularized injury, this Court is restrained from allowing Plaintiffs to step into the shoes of these former employees to challenge the validity of the contractual provision. Allen v. Wright, 468 U.S. 737, 756 (1984) ("Standing doctrine embraces several judicially self-imposed limits on the exercise of federal jurisdiction, such as the general prohibition on a litigant's raising another person's legal rights . . . .").

The Court also risks issuing an advisory opinion by reaching the merits of this motion.   Plaintiffs have not provided a copy of any of the agreements at issue.   Plaintiffs cannot attest with certainty to the exact language of the clause at issue.   Plaintiffs have not identified the individuals who have declined to submit to an interview, their job titles, or any other details regarding their roles at Freddie Mac or the circumstances of their departures.   Without these and other details, Plaintiffs essentially ask the Court to find this contractual language void regardless of the circumstances.   The Court will not risk issuing an advisory opinion on a hypothetical set of facts. See North Carolina v. Rice, 404 U.S. 244, 246 (1971) ("To be cognizable in a federal court, a suit must be definite and concrete, touching the legal relations of parties having adverse legal interests. . . .  It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."); In re Spectrum Brands, Inc. Sec. Litig., No. 05 Civ. 2494, 2007 WL 1483633, at *4 (N.D. Ga. May 18, 2007) (denying motion to clarify the scope of confidentiality agreements because without a copy of the agreement, it risked "issu[ing] an impermissible advisory opinion").

###### 2.    Housing and Economic Recovery Act of 2008

In response to the subprime mortgage crisis, Congress enacted the Housing and Economic Recovery Act of 2008 ("HERA"), Pub L. No. 110-289, 122 Stat. 2654, codified at 12 U.S.C. § 4617.    HERA created the FHFA, which succeeded the Office of Federal Housing Enterprise Oversight as the regulator of Fannie Mae and Freddie Mac.    Pursuant to authority granted by Congress in HERA, FHFA Director James Lockhart appointed the FHFA as conservator of Freddie Mac on September 6, 2008.    As conservator, the FHFA inherited "all rights, titles, powers and privileges" previously possessed by Freddie Mac, its stockholders, officers, and directors. 12 U.S.C. § 4617(b)(2); Sadowsky Testamentary Trust v. Syron, 639 F. Supp. 2d 347, 349 (S.D.N.Y. 2009).    Accordingly, the FHFA is now, among other things, empowered to:

- "take over the assets of and operate [Freddie Mac] with all the powers of the shareholders, the directors, and the officers of [Freddie Mac] and conduct all business of [Freddie Mac]," 12 U.S.C. § 4617(b)(2)(B)(i);
- "collect all obligations and money due the regulated entity," id. § 4617(b)(2)(B)(ii);
- "enforce any contract . . . entered into by [Freddie Mac]," id. § 4617(d)(13)(A) (emphasis added);
- "take any action authorized by this section, which the Agency determines is in the best interests of [Freddie Mac] or the Agency." Id. § 4617(b)(2)(J)(ii).

The court lacks jurisdiction to adjudicate matters which may restrict the FHFA's ability to exercise these powers. Id. §

4617(f) ("[N]o court may take any action to restrain or affect the exercise of powers or functions of the Agency as a conservator or a receiver.").

The FHFA argues that the court lacks jurisdiction to declare the non-participation clause unenforceable because such a declaration will restrain and affect the exercise of the conservator's powers to enforce Freddie Mac contracts. In analyzing the limits of the Court's authority under § 4617(f), the Court may turn to precedent relating to the nearly identical anti-injunction statute under the Financial Institutions, Reform, Recovery, and Enforcement Act of 1989 ("FIRREA").[4] See Sadowsky, 639 F. Supp. 2d at 350-51; In re Fed. Nat'l Ass'n Sec., Derivative, & ERISA Litig., 629 F. Supp. 2d 1, 2 (D.D.C. 2009); In re Fed. Home Loan Mortgage Corp. Derivative Litig., 643 F. Supp. 2d 790, 795-96 (E.D. Va. 2009).

It does not appear that a court in this Circuit has directly addressed whether the HERA or FIRREA anti-injunction provision restricts the court's jurisdiction to hear a contract dispute involving a company now in conservatorship. However, courts generally have interpreted the anti-injunction provision

---

[4] FIRREA provided similar powers to conservators or receivers of savings and loan institutions. It provided in pertinent part that "no court may take any action . . . to restrain or affect the exercise of powers or functions of the [FIDC or RTC] as a conservator or a receiver." 12 U.S.C. § 1821(j).

broadly, holding that FIRREA bars all equitable relief relating
to the statutorily provided powers of the receiver. See, e.g.,
Freeman v. FDIC, 56 F.3d 1394, 1399 (D.C. Cir. 1995) ("Not only
does [FIRREA] bar injunctive relief, but in the circumstances of
the present case where appellants seek a declaratory judgment
that would effectively 'restrain' the FDIC from foreclosing on
their property, [it] deprives the court of power to grant that
remedy as well."); St. George Maronite Catholic Church v. Green,
No. SA-94-CA-334, 1994 WL 763743, at *6-7 (W.D. Tex. July 25,
1994) (holding that FIRREA "bars any relief that would affect
the contract between [the receiver] and [a third party], whether
that relief is termed rescission, declaratory, or anything
else").

By moving to declare unenforceable the non-participation
clause in Freddie Mac severance agreements, in essence
Plaintiffs are seeking an order which restrains the FHFA from
enforcing this contractual provision in the future.  The FHFA is
well within its statutory authority to enforce the contracts of
Freddie Mac and take any other action it determines to be in the
best interest of Freddie Mac.  HERA clearly provides that this
Court does not have the jurisdiction to interfere with such
authority. See Volges v. Resolution Trust Corp., 32 F.3d at 50,
52 (2d Cir. 1994) (holding that the FIRREA anti-injunction
provision "is a direct manifestation of Congress's intent to

prevent courts from interfering with the [conservator] in the exercise of its statutory powers").

The Court concludes that Plaintiffs lack standing to challenge the provision within the Freddie Mac severance agreements. Even if Plaintiffs were to have standing, the Court lacks jurisdiction to adjudicate this dispute pursuant to HERA.

### III. CONCLUSION

For the reasons stated above, Plaintiffs' motion to lift the PSLRA discovery stay is denied. Plaintiffs' motion to declare unenforceable the non-participation clause in Freddie Mac severance agreements also is denied.

SO ORDERED.

Dated:  New York, New York
        December 7, 2009

                                JOHN F. KEENAN
                        United States District Judge